7 N.J. Super. 608 (1950)
72 A.2d 389
ANGELICA KNOX, PLAINTIFF,
v.
JOHN M. O'BRIEN, DEFENDANT.
Superior Court of New Jersey, Cape May County Court Law Division.
Decided March 22, 1950.
*609 Mr. Albert M. Ash, attorney for plaintiff.
Mr. John M. O'Brien, attorney pro se.
TENENBAUM, J.C.C.
John M. O'Brien, the defendant, father of Eileen O'Brien, aged eleven, and Mark O'Brien, aged eight, residing in the Township of Dennis, Cape May County, is charged by Angelica Knox, the plaintiff Attendance Officer of the School District of the Township of Dennis, with failing to cause the named children regularly to attend the public schools of the said School District, and further charges the defendant with having neither caused the children to attend a day school, in which there is given instruction equivalent to that provided in the public schools for children of similar grades and attainment, nor have they received equivalent instruction elsewhere than at school, contrary to the provisions of R.S. 18:14-14.
The defendant seeks exoneration from his conduct by advancing:
(1) The New Jersey statute under which the complaint is brought is unconstitutional because it violates the Fourteenth Amendment of the United States Constitution.
*610 (2) The defendant has provided instruction for the two children equivalent to that provided in the public schools for children of similar grades and attainment.
As to the validity of R.S. 18:14-14, and commonly known as the "Compulsory Education Law," the act in question, under which this action is brought, is as follows:
"Every parent, guardian or other person having custody and control of a child between the ages of seven and sixteen years shall cause such child regularly to attend the public schools of the district or a day school in which there is given instruction equivalent to that provided in the public schools for children of similar grades and attainments or to receive equivalent instruction elsewhere than at school * * *. Such regular attendance shall be during all the days and hours that the public schools are in session in the school district unless it is shown to the satisfaction of the board of education of the school district that the mental condition of the child is such that he cannot benefit from instruction in the school or that the bodily condition of the child is such as to prevent his attendance at school."
The pertinent portion of the Fourteenth Amendment of the United States Constitution reads as follows:
"No State shall * * * deprive any person of life, liberty, or property, without due process of law."
The right of a sovereign state to adopt legislation to direct the paths of its children to seek education for enlightenment and literacy, so as to enjoy full and complete life, is so fundamental as to relieve the need for judicial citation.
Very recently the United States Supreme Court gave its approval to this important duty of government when it said:
"It is much too late to argue that legislation intended to facilitate the opportunity of children to get a secular education serves no public purpose." Everson v. Board of Education, 330 U.S. at page 7, 67 Sup. Ct. 504 (1947).
Mr. Justice Rutledge in delivering the majority opinion of the United State Supreme Court in Prince v. Massachusetts, 321 U.S. at page 166, 64 Sup. Ct. 438 (1944), said:
*611 "Acting to guard the general interest in youth's well being, the State as parens partiae may restrict the parents' control by requiring school attendance, regulating or prohibiting the child's labor, and in many other ways."
A democracy would fail to meet the challenge if it were not to approve the right of the State to adopt legislation having for its ends standards of education which may forever destroy illiteracy, and to clothe its youthful citizens with academic attainments wherewith to enjoy the high cultural and secular heights thus far reached. To preserve this American way of life and its full enjoyment, this nation has only recently emerged from a global conflict.
The statute in question does not infringe upon any constitutional limitation, and accordingly, I hold the same to be valid.
Mansfield and Swett, Inc., v. The Town of West Orange, 120 N.J.L. at page 150 (Sup. Ct. 1938).
Did the defendant supply to the two children instruction equivalent to that provided in the public schools for children of similar grades and attainments?
The word "equivalent" appears not to have been directly construed by our courts, but Mr. Justice Schaffer, speaking for the Supreme Court of Pennsylvania In re Bonsall's Estate, 288 Pa. 39, 135 A. 724 (Sup. Ct. 1927), placed a judicial interpretation upon the import and meaning of the word by giving it the following effect:
"Equal in worth or value, force, power, effect, import and the like." (Quoting from McLean v. Moran, 38 Mont. 298)
Mrs. Mary Alice O'Brien, the wife of the defendant, undertook the teaching of the two children in question. Did her efforts meet the test? The result must be harvested from the facts, which leads to a consideration therefrom of the following:
(1) Did Mrs. O'Brien possess the necessary teaching qualifications?
(2) Was the teaching material of approved standard?
*612 (3) Did the children have the full advantages supplied by the public schools?
Eileen was attending the fifth grade at the public school in the Village of Eldora, and Mark was attending the third grade at the public school in the Village of South Dennis; both schools in the School District of the Township of Dennis. The daughter was withdrawn on October 11, 1949, and the son on October 25, 1949. Effort was made to have the children return, and to that end a meeting was had with the Board of Education of the School District, but without avail. Thereafter, the defendant wrote a letter to the Board of Education, as follows:
"To the Board of Education, Dennis Township, care of Mr. Simpkins, President. Gentlemen: We notify you herewith that Mark and Eileen O'Brien, on Route 49, between Clermont and South Dennis, are receiving regular instruction under a qualified teacher, in compliance with State Laws of the State of New Jersey, namely Title 18, Chapter 14, Article 2. This instruction is equivalent to that being given in the Public schools of this school district. Respectfully, John M. O'Brien."
The testimony revealed that the "qualified teacher" referred to in the foregoing communication was Mrs. Mary Alice O'Brien, the defendant's wife. Mrs. O'Brien was graduated in 1928 from the College of St. Elizabeth in New Jersey, receiving a Bachelor of Arts degree, and she held a Bachelor's Diploma in Education. She taught approximately two years in all at several schools, never, however, completing a full academic year. She taught at St. Luke's School, St. Anselm's School and St. Cecilia's School, all in the City of New York, and while at college she did some practice teaching. The special educational training received by Mrs. O'Brien qualified her to teach secondary schools, which are commonly designated as embracing grades from seven to twelve, both inclusive. The last year in which Mrs. O'Brien was actively engaged in teaching was in 1930  some twenty years ago.
The teaching profession in the public school system is divided into two branches by the educational authorities of the State, namely, those qualified and certificated to teach in *613 elementary schools, and those qualified and certificated to teach in the secondary schools. The individual teacher must possess special skills to teach in the separate schools; the qualifications are not interchangeable. Special study and adaptation must be acquired by teachers in each of the several branches. Mrs. O'Brien has not now or ever had a certificate to teach in the elementary grades.
During the last two decades great progress has been made in the development of new technics and methods in imparting knowledge to young children. Thus, by comparing the standards requisite to teach in the elementary grades of public schools to those possessed by Mrs. O'Brien are unequal, and hence, not equivalent.
Having reached this conclusion, the determination could well rest here, but I choose to dispose of the remaining factual questions.
The teaching material possessed by Mr. and Mrs. O'Brien, and such additional material as has been obtained by them from the public schools in Dennis Township, while not as complete as that used in the Dennis Township public schools, is ample in quantity and quality to meet the needs of fair teaching material in the third and fifth grades respectively, and therefore, is deemed to be reasonably adequate.
The defendant and his wife, together with three other children, aged three, five and six, and Mark and Eileen, and a Miss Frances Frankl, and a Mr. Ernest Lindgren, occupy a frame house that has been under construction since 1936, the work of building being done and performed by the defendant and Lindgren as their time and finances would permit. Mr. Lindgren is the owner and the O'Briens occupy it by some undisclosed arrangement. The first floor consists of seven rooms; the second story is unfinished, yet occupied by the owner. Mrs. O'Brien conducts her classes in the living room, where John, Judy, Mark and Eileen receive instruction from her.
The various ages of the children place them in four distinct school grades, necessitating instruction at four different levels *614 for the normal absorption of the advanced instruction. The method of evaluating the progress of each child's effort is by standards developed by Mrs. O'Brien, and not in complete harmony with the method used in the public school system. The instructress has scheduled hours for instruction, and short play periods, which are confined to the association of the children themselves. The children have not made the acquaintance of any other children in the community. I consider this a disadvantage where the comradeship of other desirable children is available.
The underlying philosophy of modern life is that people, through social intercourse with one another, shall live in amity, and to absorb unto ourselves that which is good in our neighbor, and to shun that which is bad. True, it has been the hope of all people to achieve the Utopian life  whether that goal shall ever be achieved depends upon our ability to have respect for and consideration of our fellows.
Cloister and shelter have its place, but not in the every day give and take of life. Research discloses that even the siblings of royalty were encouraged under supervision to have contact with the commoner.
The entire lack of free association with other children being denied to Mark and Eileen, by design or otherwise, which is afforded them at public school, leads me to the conclusion that they are not receiving education equivalent to that provided in the public schools in the third and fifth grades.
The evidence convinces me, beyond a reasonable doubt, of the defendant's guilt as charged, and I do, therefore, find him to be a disorderly person.