## THE STATE *v.* PETERMAN.

[No. 5,208.    Filed April 6, 1904.]

SCHOOLS.—*Compulsory Education.*—*Construction of Statute.*—The purpose of the compulsory education law, §§6033a—6033k Burns 1901, is to secure to the child the opportunity to acquire an education, and the law is complied with by a parent who employs a competent school-teacher and places his child under her care and instruction during the school year, though such teacher is not at the time a licensed teacher, is not conducting a school, but receives such child at her home and teaches her, during the regular school hours of the school year, the branches she would have been taught had she attended the public schools.

From Montgomery Circuit Court; *Jere West*, Judge.

Clarence C. Peterman was prosecuted for an alleged violation of the compulsory education law. From a judgment of acquittal, the State appeals.    *Affirmed.*

*C. W. Miller*, Attorney-General, *J. B. Murphy* and *C. H. Jones*, for State.

*C. W. Burton*, *W. T. Whittington* and *W. A. Whittington*, for appellee.

HENLEY, C. J.—Appellee was prosecuted for an alleged violation of §6033a *et seq.* Burns 1901 of the compulsory education law.

The statute referred to is in the following words: "That, every parent, guardian, or other person in the State of Indiana, having control or charge of any child or children between the ages of seven and fourteen years, inclusive, shall be required to send such child or children to a public, private, or parochial school or to two or all [more] of these schools, each school year, for a term or period not less than that of the public schools of the school corporation where the child or children reside:    Provided further, that no child in good mental and physical condition shall for any cause, any rule or law to the contrary, be precluded from attending schools when such school is in session.    *  *  *

The truant officer shall see that the provisions of this act are complied with, and when from personal knowledge or by report or complaint from any resident or teacher of the township under his supervision, he believes that any child, subject to the provisions of this act is habitually tardy or absent from school, he shall immediately give written notice to the parent, guardian or custodian of such child that the attendance of such child is required at school, and if within five days such parent, guardian or custodian of such child does not comply with the provisions of this section, then such truant officer shall make complaint against such parent, guardian or custodian of such child in any court of record for violation of the provisions of this act: Provided, that only one notice shall be required for any child in any one year. Any such parent, guardian or custodian of any child who shall violate the provisions of this act shall be adjudged guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not less than $5 nor more than $25, to which may be added, in the discretion of the court, imprisonment in the county jail not less than two nor more than ninety days."

It was shown by the defendant (appellee) upon the trial, that immediately after he was served with notice by the truant officer he employed one Mrs. Hugelheim to teach his said child at the home of said Mrs. Hugelheim, she living at said time in the town of Mace, about one-fourth of a mile from the residence of the defendant; that the said Mrs. Hugelheim was a competent teacher, in every way qualified to teach in the public schools, and that she had for several years taught in the public schools of said Montgomery county, and was a very successful teacher, and was recognized by the superintendent of said county as a good, efficient, well-qualified, and successful teacher; that it had been two years since she had taught in the public schools, and one year since she had held a teacher's license, but that she had never been refused a teacher's license or failed on

State *v.* Peterman.

an examination, but had quit teaching school by reason of her getting married, and at the time said arrangement was made with her by said defendant she was a married woman, but had no children, and her husband was not at home from Monday until Saturday evening; that it was arranged with said Mrs. Hugelheim that she should teach said child all the branches and whatever was taught in the public schools, and that she should go to her house at the regular public school hours in the morning, and should remain during the whole day, and be under the training and discipline of the said Mrs. Hugelheim, and that she should have her at a desk studying or have her reciting during all the time from 8:30 o'clock in the morning until 4 o'clock in the afternoon, except that she should have fifteen minutes' intermission in the morning at the regular intermission time at the public school, and should have an hour's intermission at noon, and fifteen minutes' intermission in the afternoon; that she was to teach said child during the public school year, or from the time she took said child to the time said public school would close for the year 1903; that no definite amount was agreed upon to be paid by said defendant to said Hugelheim for her said services in said matter, but that it was agreed that he would pay her whatever was right; that said child commenced attending at the home of said Hugelheim, and she commenced teaching and training her according to said contract, on the 22d day of January, 1903, and that said child has attended at said home of said Hugelheim regularly every school day in the week, and has been taught by said Mrs. Hugelheim according to said arrangements, and has received instructions equal to that which she would have received had she attended the public schools, and has advanced as fast or faster than she did while attending public school, and that said teacher has regularly attended her at all times, and has given her proper instructions, and has taught her all the branches that she would have been taught had she attended the public school;

that the said Mrs. Hugelheim did not advertise herself as keeping a private school, and had no regular tuition fixed, and had no school equipments other than a study table and a desk owned by said child, and a blackboard upon said desk, and that she had said child sit most of the time at her desk in the sitting-room, but sometimes, when she thought said child, on account of her age, should move around, she allowed her temporarily to be in the kitchen, and that said Mrs. Hugelheim had no arrangements to take any other pupils for instruction; that there was evidence from which said jury could find that said arrangement was entered into in good faith in an honest effort to carry out the provisions of said section of the statute providing for compulsory education, and that all children between certain ages should attend a public, private, or parochial school during the school year of the district in which they live, and that it was the intention of said defendant to keep his said child at school under said arrangements with said Mrs. Hugelheim, and that the said Mrs. Hugelheim intended to keep said child regularly at her studies during the same time that she would have been had she attended the public school, and that the said Mrs. Hugelheim gave her and will continue to give her the same instruction that she would have received had she attended the said public school, and that the said Mrs. Hugelheim was capable and able to give said child said instruction; that the said Mrs. Hugelheim did not advertise herself as keeping a private school, and was not known in the neighborhood as the keeper of a private school, and she did not desire to receive or attempt to get other pupils than the defendant's said child, and had not made up her mind at that time to receive other pupils should they apply, and had no regular tuition fixed and no regularly prescribed terms of school, and that the said Mrs. Hugelheim had never attempted to run a private school before, or to receive pupils for instruction; that it was agreed between the said defendant and the said Mrs.

Hugelheim that she should teach said, child under said
agreement as long as the public schools in that township
were in session, and for a time or period not less than that
of the public schools of the school corporation where said
child resided, and give her a course equal, if not superior,
to that of the public schools. It was also shown that ap-
pellee's child had been attending the public school of the
district in which he resided until taken therefrom by him
on account of some disagreement with the teacher and the
school authorities. Upon trial, the jury returned a verdict
of not guilty.

Appellant complains of the action of the court in refus-
ing to give certain instructions, the discussion of which,
we think, will cover every question raised by the appeal.
The whole question in this case is, what is a private school
within the meaning of the statute? The contention of the
appellant is clearly stated in the following instruction,
which was refused by the court: "(3) A private school,
within the meaning of the law under which this prosecution
is conducted, means a reputable private school, organized
and conducted as such in good faith by a reputable person
or persons, who possess the necessary qualifications as
teacher or teachers, or in which such teacher or teachers
were provided, and who have the proper equipment for con-
ducting such a school, and who hold themselves out as con-
ducting such a school."

We think the instruction was properly refused, because
it is radically wrong. A school, in the ordinary acceptation
of its meaning is a place where instruction is imparted to
the young. If a parent employs and brings into his resi-
dence a teacher for the purpose of instructing his child or
children, and such instruction is given as the law contem-
plates, the meaning and spirit of the law has been fully
complied with. This would be the school of the child or
children so educated, and would be as much a private school
as if advertised and conducted as such. We do not think

State *v.* Peterman.

that the number of persons, whether one or many, makes a place where instruction is imparted any less or more a school. Under a law very similar to ours the supreme court of Massachusetts has held that the object and purpose of a compulsory education law is that all the children shall be educated, not that they shall be educated in any particular way. *Commonwealth* v. *Roberts,* 159 Mass. 372, 34 N. E. 402.

The other instructions tendered by appellant and refused, of which complaint is made, were, perhaps, not so radical as the one quoted in their general definition of a private school, and the duty of the parent under the statute; but they were all wrong and tainted with the general proposition which pervaded appellant's argument to the effect that the law has to do with the way or place where a child shall be educated.

In *State* v. *Bailey,* 157 Ind. 324, 329, 59 L. R. A. 435, the court said: "The natural rights of a parent to the custody and control of his infant child are subordinate to the power of the State, and may be restricted and regulated by municipal laws. One of the most important natural duties of the parent is his obligation to educate his child, and this duty he owes not to the child only, but to the commonwealth. If he neglects to perform it, or wilfully refuses to do so, he may be coerced by law to execute such civil obligation. The welfare of the child and the best interests of society require that the State shall exert its sovereign authority to secure to the child the opportunity to acquire an education. Statutes making it compulsory upon the parent, guardian, or other person having the custody and control of children to send them to public or private schools for longer or shorter periods, during certain years of the life of such children, have not only been upheld as strictly within the constitutional power of the legislature, but have generally been regarded as necessary to carry out the express purposes of the Constitution itself."

But what is all this for? Why does the State take control of the child, under certain circumstances, at a certain period of its life? Its purpose is "to secure to the child the opportunity to acquire an education," which the welfare of the child and the best interests of society demand. The result to be obtained, and not the means or manner of obtaining it, was the goal which the lawmakers were attempting to reach. The law was made for the parent who does not educate his child, and not for the parent who employs a teacher and pays him out of his private purse, and so places within the reach of the child the opportunity and means of acquiring an education equal to that obtainable in the public schools of the State.

The instructions given by the court to the jury were, to say the least, as favorable to appellant as our construction of the statute would warrant.

The appeal of the State is not sustained.