95 N.J. Super. 382 (1967)
231 A.2d 252
STATE OF NEW JERSEY, PLAINTIFF,
v.
BARBARA MASSA AND FRANK MASSA, DEFENDANTS.
Superior Court of New Jersey, Morris County Court, Law Division.
Decided June 1, 1967.
*383 Mr. Bertram Latzer, Assistant Prosecutor of Morris County, for plaintiff (Mr. Frank C. Scerbo, Prosecutor, attorney).
Mrs. Barbara Massa and Mr. Frank Massa appeared pro se.
COLLINS, J.C.C.
This is a trial de novo on appeal from the Pequannock Township Municipal Court. Defendants were charged and convicted with failing to cause their daughter Barbara, age 12, regularly to attend the public schools of the district and further for failing to either send Barbara to a private school or provide an equivalent education elsewhere than at school, contrary to the provisions of N.J.S.A. 18: 14-14. The municipal magistrate imposed a fine of $2,490 for both defendants.
Mr. and Mrs. Massa appeared pro se. Mrs. Massa conducted the case; Mr. Massa concurred.
The State presented two witnesses who testified that Barbara had been registered in the Pequannock Township School but failed to attend the 6th grade class from April 25, 1966 to June 1966 and the following school year from September 8, 1966 to November 16, 1966  a total consecutive absence of 84 days.
*384 Mrs. Massa testified that she had taught Barbara at home for two years before September 1965. Barbara returned to school in September 1965, but began receiving her education at home again on April 25, 1966.
Mrs. Massa said her motive was that she desired the pleasure of seeing her daughter's mind develop. She felt she wanted to be with her child when the child would be more alive and fresh. She also maintained that in school much time was wasted and that at home a student can make better use of her time.
Mrs. Massa is a high school graduate. Her husband is an interior decorator. Neither holds a teacher's certificate. However, the State stipulated that a child may be taught at home and also that Mr. or Mrs. Massa need not be certified by the State of New Jersey to so teach. The sole issue in this case is one of equivalency. Have defendants provided their daughter with an education equivalent to that provided by the Pequannock Township School System?
Mrs. Massa introduced into evidence 19 exhibits. Five of these exhibits, in booklet form, are condensations of basic subjects, booklets are concise and seem to contain all the basic subject material for the respective subjects. Mrs. Massa also introduced textbooks which are used as supplements to her own compilations as well as for test material and written problems.
Mrs. Massa introduced English, spelling and mathematics tests taken by her daughter at the Pequannock School after she had been taught for two years at home. The lowest mark on these tests was a B.
Other exhibits included one of over 100 geography booklets prepared by Mrs. Massa from National Geographic Magazine, each containing articles and maps concerning the topography and societies of a particular part of the world; a 1' wide and 30' long scroll depicting the evolution of life on earth commencing five billion years ago and continuing to the present, which appears to be a good visual aid not merely for children but adults as well; a series of 27 maps for study and memorization; *385 textbooks used to supplement defendant's material; examples of books used as either references or historical reading, and photographs to show that the Massa family lives a normal, active, wholesome life. The family consists of the parents, three sons (Marshall, age 16, and Michael, age 15, both attend high school; and William, age 6) and daughter Barbara.
There is also a report by an independent testing service of Barbara's scores on standard achievement tests. They show that she is considerably higher than the national median except in arithmetic.
Mrs. Massa satisfied this court that she has an established program of teaching and studying. There are definite times each day for the various subjects and recreation. She evaluates Barbara's progress through testing. If Barbara has not learned something which has been taught, Mrs. Massa then reviews that particular area.
Barbara takes violin lessons and attends dancing school. She also is taught art by her father, who has taught this subject in various schools.
Mrs. Massa called Margaret Cordasco as a witness. She had been Barbara's teacher from September 1965 to April 1966. She testified basically that Barbara was bright, well behaved and not different from the average child her age except for some trouble adjusting socially.
The State called as a witness David MacMurray, the Assistant Superintendent of Pequannock Schools. He testified that the defendants were not giving Barbara an equivalent education. Most of his testimony dealt with Mrs. Massa's lack of certification and background for teaching and the lack of social development of Barbara because she is being taught alone.
He outlined procedures which Pequannock teachers perform, such as evaluation sheets, lesson plans and use of visual aids. He also stressed specialization, since Pequannock schools have qualified teachers for certain specialized subjects. He did not think the defendants had the specialization necessary *386 to teach all basic subjects. He also testified about extra-curricular activity, which is available but not required.
The State placed six exhibits in evidence. These included a more recent mathematics book than is being used by defendants, a sample of teacher evaluation, a list of visual aids, sample schedules for the day and lesson plans, and an achievement testing program.
Leslie Rear, the Morris County Superintendent of Schools, then testified for the State. His testimony, like that of MacMurray, dealt primarily with social development of the child and Mrs. Massa's qualifications. He felt that Barbara was not participating in the learning process since she had not participated in the development of the material. Mrs. Massa, however, testified that these materials were used as an outline from which she taught her daughter and as a reference for her daughter to use in review  not as a substitute for all source material.
N.J.S.A. 18:14-14 provides:
"Every parent, guardian or other person having custody and control of a child between the ages of 6 and 16 years shall cause such child regularly to attend the public schools of the district or a day school in which there is given instruction equivalent to that provided in the public schools for children of similar grades and attainments or to receive equivalent instruction elsewhere than at school." (Emphasis added)
State v. Vaughn, 44 N.J. 142 (1965), interpreted the above statute to permit the parent having charge and control of the child to elect to substitute one of the alternatives for public school. It is then incumbent upon the parent to introduce evidence showing one of the alternatives is being substituted. "If there is such evidence in the case, then the ultimate burden of persuasion remains with the State," (at p. 147).
N.J.S.A. 18:14-39 provides for the penalty for violation of N.J.S.A. 18:14-14:
"A parent, guardian or other person having charge and control of a child between the ages of 6 and 16 years, who shall fail to comply with *387 any of the provisions of this article relating to his duties shall be deemed a disorderly person and shall be subject to a fine of not more than $5.00 for a first offense and not more than $25.00 for each subsequent offense, in the discretion of the court."
The statute subjects the defendants to conviction as a disorderly person, a quasi-criminal offense. In quasi-criminal proceedings the burden of proof is beyond a reasonable doubt. State v. Cestone, 38 N.J. Super. 139, 148 (App. Div. 1955).
This case presents two questions on the issue of equivalency for determination. What does the word "equivalent" mean in the context of N.J.S.A. 18:14-14? And, has the State carried the required burden of proof to convict defendants?
In Knox v. O'Brien, 7 N.J. Super. 608 (1950), the County Court interpreted the word "equivalent" to include not only academic equivalency but also the equivalency of social development. This interpretation appears untenable in the face of the language of our own statute and also the decisions in other jurisdictions.
If the interpretation in Knox, supra, were followed, it would not be possible to have children educated outside of school. Under the Knox rationale, in order for children to develop socially it would be necessary for them to be educated in a group. A group of students being educated in the same manner and place would constitute a de facto school. Our statute provides that children may receive an equivalent education elsewhere than at school. What could have been intended by the Legislature by adding this alternative?
The Legislature must have contemplated that a child could be educated alone provided the education was equivalent to the public schools. Conditions in today's society illustrate that such situations exist. Examples are the child prodigy whose education is accelerated by private tutoring, or the infant performer whose education is provided by private tutoring. If group education is required by our statute, then these examples as well as all education at home would have to be eliminated.
*388 The court in State v. Counort, 69 Wash. 361, 124 P. 910, 41 L.R.A., N.S. 95 (Wash. Sup. Ct. 1912), held that defendant had not complied with the state law on compulsory school attendance. The Washington statute, however, provided that parents must cause their child to attend public school or private school, or obtain an excuse from the superintendent for physical or mental reasons or if such child shall have attained a reasonable proficiency in the branches of learning required by law. The conviction was upheld because of the failure of the parents to obtain permission from the superintendent.
In discussing the nature of schools the court said, "This provision of the law [concerning what constitutes a private school] is not to be determined by the place where the school is maintained, nor the individuality or number of pupils who attend it." (124 P., at p. 912; emphasis added). The court further said that the evidence of the state was to the effect that defendant maintained no school at his home. This is not the case here. Mrs. Massa was certainly teaching Barbara something.
The court in State v. Peterman, 32 Ind. App. 665, 70 N.E. 550, 551 (Ind. App. Ct. 1904), also commented on the nature of a school, stating, "We do not think that the number of persons, whether one or many, makes a place where instruction is imparted any less or more a school." That case held that a child attending the home of a private tutor was attending a private school within the meaning of the Indiana statute.
This court agrees with the above decisions that the number of students does not determine a school and, further, that a certain number of students need not be present to attain an equivalent education.
A different form of legislative intention is illustrated by the case of People v. Turner, 121 Cal. App.2d Supp. 861, 263 P.2d 685 (Cal. Super. Ct. 1953). The California statute provided that parents must send their children to public school or a private school meeting certain prescribed conditions, or that the children be instructed by a private tutor or *389 other person possessing a valid state credential for the grade taught. Defendants were convicted for failure to have such state credentials.
Other similar statutes are discussed in Rice v. Commonwealth, 188 Va. 224, 49 S.E.2d 342 (Sup. Ct. 1948), where the Virginia law required certification of teachers in the home and specified the number of hours and days that the child was to be taught each year; Parr v. State, 117 Ohio St. 23, 157 N.E. 555 (Ohio Sup. Ct. 1927), where the Ohio statute provided that a child would be exempted if he is being instructed at home by a qualified person in the subjects required by law.
Perhaps the New Jersey Legislature intended the word "equivalent" to mean taught by a certified teacher elsewhere than at school. However, I believe there are teachers today teaching in various schools in New Jersey who are not certified. The prosecutor stipulated, as stated above, that the State's position is that a child may be taught at home and that a person teaching at home is not required to be certified as a teacher by the State for the purpose of teaching his own children. Had the Legislature intended such a requirement, it would have so provided.
The other type of statute is that which allows only public school or private school education without additional alternatives. See People v. Levisen, 404 Ill. 574, 90 N.E.2d 213, 14 A.L.R.2d 1364 (Sup. Ct. 1950); State v. Hoyt, 84 N.H. 38, 146 A. 170 (N.H. Sup. Ct. 1929), and State v. Peterman, supra. Even in this situation, home education has been upheld as constituting a private school. People v. Levisen and State v. Peterman, supra.
The case of Commonwealth v. Roberts, 159 Mass. 372, 34 N.E. 402 (Mass. Sup. Jud. Ct. 1893), dealt with a statute similar to New Jersey's. The Massachusetts statute permitted instruction in schools or academies in the same town or district, or instruction by a private tutor or governess, or by the parents themselves provided it is given in good faith and is sufficient in extent. The court stated that under this statute the parents may show that the child has been sufficiently and *390 properly instructed. The object of the statute was stated to be that all children shall be educated, not that they shall be educated in a particular way.
It is in this sense that this court feels the present case should be decided. The purpose of the law is to insure the education of all children. In State v. Peterman, supra, the court stated:
"The law was made for the parent, who does not educate his child, and not for the parent * * * [who] places within the reach of the child the opportunity and means of acquiring an education equal to that obtainable in the public schools of the state." (70 N.E., at p. 552)
People v. Levisen also commented on the spirit of the relevant statute stating:
"The law is not made to punish those who provide their children with instruction equal or superior to that obtainable in public schools. It is made for the parent who fails or refuses to properly educate his child." (90 N.E.2d, at p. 215)
Faced with exiguous precedent in New Jersey and having reviewed the above cited cases in other states, this court holds that the language of the New Jersey statute, N.J.S.A. 18:14-14, providing for "equivalent education elsewhere than at school," requires only a showing of academic equivalence. As stated above, to hold that the statute requires equivalent social contact and development as well would emasculate this alternative and allow only group education, thereby eliminating private tutoring or home education. A statute is to be interpreted to uphold its validity in its entirety if possible. Rainbow Inn, Inc. v. Clayton Nat. Bank, 86 N.J. Super. 13 (App. Div. 1964). This is the only reasonable interpretation available in this case which would accomplish this end.
Having determined the intent of the Legislature as requiring only equivalent academic instruction, the only remaining question is whether the defendants provided their daughter with an education equivalent to that available in *391 the public schools. After reviewing the evidence presented by both the State and the defendants, this court finds that the State has not shown beyond a reasonable doubt that defendants failed to provide their daughter with an equivalent education.
The majority of testimony of the State's witnesses dealt with the lack of social development.
The other point pressed by the State was Mrs. Massa's lack of teaching ability and techniques based upon her limited education and experience. However, this court finds this testimony to be inapposite to the actual issue of equivalency under the New Jersey statute and the stipulations of the State. In any case, from my observation of her while testifying and during oral argument, I am satisfied that Mrs. Massa is self-educated and well qualified to teach her daughter the basic subjects from grades one through eight.
The remainder of the testimony of the State's witnesses dealt primarily with the child's deficiency in mathematics. This alone, however, does not establish an educational program unequivalent to that in the public schools in the face of the evidence presented by defendants.
Defendants presented a great deal of evidence to support their position, not the least of which was their daughter's test papers taken in the Pequannock school after having been taught at home for two years. The results speak for themselves. The evidence of the State which was actually directed toward the issue of equivalency in this case fell short of the required burden of proof.
The Massa family, all of whom were present at each of the hearings, appeared to be a normal, well-adjusted family. The behavior of the four Massa children in the courtroom evidenced an exemplary upbringing.
It is the opinion of this court that defendants' daughter has received and is receiving an education equivalent to that available in the Pequannock public schools. There is no indication of bad faith or improper motive on defendants' part. Under a more definite statute with sufficient guidelines or a lesser *392 burden of proof, this might not necessarily be the case. However, within the framework of the existing law and the nature of the stipulations by the State, this court finds the defendants not guilty and reverses the municipal court conviction.
In view of the fact that defendants appeared pro se, the court suggests that the prosecutor draw an order in accordance herewith.