Richard MAZANEC, et al.,
Plaintiffs-Appellants,

v.

NORTH JUDSON–SAN PIERRE
SCHOOL CORPORATION, et
al., Defendants-Appellees.

No. 84–2485.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 26, 1985.

Decided May 31, 1985.

See also, D.C., 552 F.Supp. 873.

Richard J. LaSalvia, South Bend, Ind., for plaintiffs-appellants.

Thomas O. Mulligan, Mulligan & Fenton, Knox, Ind., David Michael Wallman, Office of Atty. Gen., Indianapolis, Ind., for defendants-appellees.

Before WOOD and POSNER, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

POSNER, Circuit Judge.

The question raised by this appeal is whether the district judge was right to abstain from deciding the merits of the plaintiffs' case under the doctrine of *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Our previous opinion, *Mazanec v. North Judson-San Pierre School Corp.*, 750 F.2d 625 (7th Cir.1984), held that such an order to abstain is appealable as a final judgment. See 28 U.S.C. § 1291.

■ The plaintiffs, Jehovah's Witnesses who say they decided to educate their children at home in order to shield them from the secular and immoral atmosphere of the public schools, brought this suit in federal district court in Indiana in July 1981 under section 1 of the Civil Rights Act of 1871, now 42 U.S.C. § 1983, claiming that Indiana's compulsory-schooling law both is unconstitutionally vague and infringes their religious freedom. The defendants remaining in the case are the local public school board and various local officials. The complaint asks for damages, and for declaratory and injunctive relief against what the plaintiffs contend is a pattern of harass-

ment illustrated by two consecutive criminal prosecutions (dismissed after this complaint was filed) for violation of the compulsory-schooling law. The allegations of harassment show that the plaintiffs have an actual controversy with the defendants within the meaning of Article III of the Constitution. Compare *Illinois ex rel. Barra v. Archer Daniels Midland Co.*, 704 F.2d 935, 941–43 (7th Cir.1983).

The Indiana law requires parents to send their children to school "unless the child is being provided with instruction equivalent to that given in the public schools." Ind. Code § 20–8.1–3–34. So, not surprisingly, an important issue at trial was whether the Mazanecs' home instruction was indeed "equivalent to that given in the public schools." There was evidence that all of the instruction was given either by Mrs. Mazanec, who does not have a high-school education, or by one of her children; that the children were seen outside the house during school hours; and that she conducted a business in irrigating colons during school hours. A couple of months after the three-day bench trial ended last May the judge decided to abstain from deciding the case. Unless reversed, this order will force the plaintiffs to start the case over in the state courts of Indiana. The judge wanted to give those courts a chance to construe Indiana's compulsory-schooling law in a way that might obviate the constitutional controversy.

■ The judge's order came awfully late in the day. The case was three years old, and had been tried; it is now in its fifth year. Abstention after trial condemns the parties to the delay and expense of a second trial, in state court, followed by an appeal in the state court system and after that, perhaps, a return to the federal court for more proceedings—which might include another trial; in any event, the first trial is made a complete waste of time. Such long delay argues against abstention. See, e.g., *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 329, 84 S.Ct. 1293, 1296, 12 L.Ed.2d 350 (1964); *Harris County Comm'rs Court v. Moore*, 420 U.S. 77,

84, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1975) (dictum); *Bickham v. Lashof*, 620 F.2d 1238, 1245 (7th Cir.1980); *Lister v. Lucey*, 575 F.2d 1325, 1333 (7th Cir.1978); *Professional Plan Examiners of New Jersey, Inc. v. Lefante*, 750 F.2d 282, 291 (3d Cir. 1984); 17 Wright, Miller & Cooper, Federal Practice and Procedure § 4242, at p. 468 (1978). And though delay is not the only thing the court must consider when faced with a motion to abstain, we think that if a case has gone to trial the presumption should be in favor of deciding it rather than abstaining.

■ At least this is true where neither party requested abstention before trial. (This is such a case. The defendants moved for abstention early on, but apparently abandoned the motion when the plaintiffs filed an amended complaint, and only renewed it at the end of the trial.) Maybe if one party had requested abstention before trial the fact that the judge denied the request and went on to try the case should not count against the request, for the party who made it might well have lacked any appellate remedy against the denial. In this circuit, orders granting abstention are appealable as final orders, as we reaffirmed in our previous opinion in this case. But orders denying abstention before final judgment—orders which thus are no more final than orders denying motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, see, e.g., *Texaco, Inc. v. Cottage Hill Operating Co.*, 709 F.2d 452, 453 (7th Cir.1983)—are appealable only if the *"Enelow-Ettelson"* doctrine (see *id.* at 454) is applicable. It would be applicable only if the underlying suit was a suit at law and the *Pullman* doctrine is a doctrine of equity, a question left open in our first opinion, see 750 F.2d at 626. Only then would the denial of the motion to abstain be the denial of a motion to stay, on equitable grounds, a suit at law; and no other kind of denial of a stay is made appealable by the *Enelow-Ettelson* doctrine.

■ The presumption that a case which has been tried should be decided has not been rebutted in this case; on the contrary, no useful purpose would be served by abstaining in this case. The main purpose of the *Pullman* doctrine is to avoid, if possible, declaring a state statute unconstitutional, by giving the state courts a chance to interpret it narrowly. See, e.g., *Zwickler v. Koota*, 389 U.S. 241, 251 n. 14 (1967); *Hawaii Housing Authority v. Midkiff*, 104 S.Ct. 2321, 2327 (1984). So there are two requirements for abstaining under *Pullman*: some risk that the statute will be found unconstitutional unless narrowed; some reasonable chance that it can be narrowed through interpretation. Neither requirement is satisfied here. There is to begin with little likelihood that Indiana's compulsory-schooling law will be held unconstitutional—at least at the suit of these plaintiffs—merely because it requires that home instruction be "equivalent" to what the public schools offer. True, the Supreme Court held in *Wisconsin v. Yoder*, 406 U.S. 205 (1972), that Wisconsin's compulsory-schooling law violated the religious rights of the Amish. In part this was because "not only do the Amish accept the necessity for formal schooling through the eighth grade level, but [they] continue to provide what has been characterized by the undisputed testimony of expert educators as an 'ideal' vocational education for their children in the adolescent years." *Id.* at 224. Whether or not this is "equivalent" home instruction—whether, indeed, Wisconsin's law allowed home instruction, a matter unclear from the Supreme Court's opinion, see *id.* at 207 n. 2—the Amish are not Jehovah's Witnesses. The Amish want their teenagers to work in the fields. Jehovah's Witnesses—these Jehovah's Witnesses, anyway—want their children to receive an academic education, only at home rather than in a public school. We do not understand the plaintiffs to be arguing that their religion commands them to deny their children an education that is equivalent to what the public schools offer, only less secular, in the same way that parochial education is less secular than public education. They argue that they are providing equivalent instruction, cf. *People v. Levi-*

*sen,* 404 Ill. 574, 90 N.E.2d 213 (1950), and this is not an argument that attacks the constitutionality of the statute.

Alternatively, however, they argue that the term "equivalent" is hopelessly vague and that the state should be forced to spell out the details of an acceptable home education. A challenge to a statute as too vague invites abstention so that the state courts can narrow the application of the statute to conduct that the Constitution allows the state to regulate. The argument here would be that the statute's lack of specificity enables local officials who are hostile to Jehovah's Witnesses to interpret the requirement of equivalent instruction in such a way as to force Jehovah's Witnesses to send their children to the public schools even though they are getting a perfectly good education at home. But before a challenge of this sort can justify abstention there must be at least a plausible argument that the statute is vague, and there is not here. See *Bangor Baptist Church v. Maine Dept. of Educational & Cultural Services,* 549 F.Supp. 1208, 1226–28 (D.Me. 1982). The term "equivalent instruction" may be brief, but brief is not vague. A wordier description would not be clearer.

■ We therefore do not see what good would come from giving the Indiana state courts first crack at the issues in this suit. If they held that the Mazanecs really had provided equivalent instruction to their children, that would indeed wash out the federal suit. But to make this possibility a controlling consideration would be to require exhaustion of state remedies before a federal civil rights suit could be brought, and that is not, as a general rule anyway, required. See, e.g., *Patsy v. Florida,* 457 U.S. 496, 503–07, 102 S.Ct. 2557, 2561–63, 73 L.Ed.2d 172 (1982). The more relevant question is whether a holding by the federal court that the Mazanecs had not provided equivalent instruction would damage substantial state interests. It would not. The state has no objection to home instruction provided it is equivalent to public-school instruction—a factual question the answer to which in a particular case will have little resonance for the education policy of the state.

The case is thus different from *Waldron v. McAtee,* 723 F.2d 1348 (7th Cir.1983), on which the district judge principally relied in deciding to abstain. The plaintiff in that case had challenged Indianapolis's loitering ordinance as unconstitutionally vague. The district judge dismissed the suit on summary judgment, the plaintiff appealed, and we held that the judge should have abstained. The ordinance was vague; and we thought the state courts should have a chance to narrow it by interpretation before we decided whether it was unconstitutionally vague. Since Indiana's compulsory-schooling law is not vague, there is little if any room to "save" it by interpretation. But more important, it does not need saving. At least so far as these plaintiffs are concerned, it is a valid law—at worst, one applied too harshly to them, to forbid home instruction that really was equivalent to instruction in public schools.

■ At the risk of supererogation, we add a final reason against abstention: the state did not ask for it until the end of the trial. We mentioned this point earlier in connection with delay; but it is also an independent argument against abstention. It is true that abstention can be ordered even if neither party requests it at any stage of the proceedings, see, e.g., *Bellotti v. Baird,* 428 U.S. 132, 143 n. 10, 96 S.Ct. 2857, 2864 n. 10, 49 L.Ed.2d 844 (1976); *Waldron v. McAtee, supra,* 723 F.2d at 1351—and this may seem surprising: if the state does not want the protection that the doctrine affords it, why should the federal court extend that protection to the state anyway? The answer is that "the state" is not an individual, but a collectivity. State attorneys general (who usually are elected officials, rather than appointees of the governor) may not have the same interests as other organs of state government; nor may local officials; and federal courts should not get involved unnecessarily in what may be intramural struggles of state government even if invited to do so by one of the contenders. But if the responsible

state officials are willing to litigate the case in federal court, that court does not *have* to force it back into state court. Cf. *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 480, 97 S.Ct. 1898, 1904, 52 L.Ed.2d 513 (1977). These state officials were willing, until the case was two years old and had been tried; and we cannot think of a good reason at this late date for forcing the case back into the state courts. The state's delay in asking for abstention may reflect the fact that a federal court ruling on the merits of the plaintiffs' complaint could have only a limited impact on important state interests.

We reverse and remand with instructions to issue a prompt decision resolving the merits.

FAIRCHILD, Senior Circuit Judge, dissenting.

With all respect, I would affirm.

Perhaps the statutory standard, "instruction equivalent to that given in the public schools," is not vague. It is, however, open to a considerable range of interpretation. How exact must be the comparison of the following elements: days of instruction per year, training of teachers, elements of curriculum, regularity of testing? Or is equivalency to be determined overall by a trier of fact after hearing expert opinion evidence?

Plaintiffs were confronted with differing views on their compliance. They were prosecuted, but told by a state attendance officer that they were in compliance in that person's opinion. They cite instances of home instruction to which they say different standards were applied.

There are no Indiana decisions (with one exception) bearing on the problem, and arguable reason why the standard should be refined by an Indiana court. The problem likely has substantial significance beyond the present case.

The parties cite a venerable Indiana Appellate Court decision holding that the fact that instruction is given in the home and not in an establishment holding itself out as a school does not prevent compliance with the statute of that time requiring attendance at a "public, private or parochial school." *State v. Peterman,* 32 Ind.App. 665, 70 N.E. 550 (1904). The Attorney General tells us, "The factual setting of *Peterman* which relies upon the presence of a formally licensed or certified teacher is undoubtedly no longer good law since Indiana does *not* require certified teachers in parochial or formal private schools." In *Peterman,* the court also recited evidence that curriculum and time spent were the same as in public school.

There are a number of factors bearing on the question of abstention, including the delay involved. The various factors do not all lead in the same direction, and leave the matter a judgment call. I do not find an abuse of discretion in the district court's decision to abstain.