**STATE of Iowa, Appellee,**

v.

**Judith KOPLIN, Appellant.**

**No. 86–511.**

Supreme Court of Iowa.

March 18, 1987.

**424**

Charles L. Harrington, Appellate Defender, and Deborah A. Goins, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., Mary E. Richards, Co. Atty., and Steven P. Van Marel, Asst. Co. Atty., for appellee.

Considered by REYNOLDSON, C.J., and LARSON, SCHULTZ, CARTER, and WOLLE, JJ.

REYNOLDSON, Chief Justice.

Judith Koplin has appealed from a judgment convicting her of False Use of a Financial Instrument (FUFI), a violation of Iowa Code section 715.6 (1985). We affirm.

The stipulated record at this bench trial conclusively shows that on January 15, 1985, Koplin's auto was involved in a collision with a car owned by Wendell Maysent at or near Ames. She had no liability insurance and her driver's license was suspended. In order to maintain her driving privileges she obtained a "General Release" form from the Department of Transportation (DOT), forged the names of Maysent and his attorney on the instrument, and filed it with the DOT. *See* Iowa Code §§ 321A.5, .6(4) (1985). This paper purported to "release and forever discharge Judith E. Koplin from all claims, causes of action, and demands ... resulting from the ... accident [of] January 15, 1985."

A complaint was filed in Story County district court charging Koplin with forging the release in violation of Iowa Code section 321A.32 (1985).[1] Later this charge was abandoned and the Story County attor-

---

**1.** The charge apparently was based on Iowa Code § 321A.32(3):

Any person who shall forge or, without authority, sign any notice provided for under section 321A.5 that a policy or bond is in effect, or any evidence of proof of financial responsibility, or who files or offers for filing any such notice or evidence of proof knowing or having reason to believe that it is forged or signed without authority, shall be guilty of a serious misdemeanor.

ney filed a trial information alleging Koplin had violated Iowa Code section 715.6.[2]

Koplin filed a motion to adjudicate law points, asserting her alleged actions did not and were not intended by the legislature to fall within the reach of Iowa Code section 715.6. Rather, she argued, her conduct was proscribed only by section 321A.32(3), the section under which she was charged initially.[3] Trial court, adjudicating these law issues, concluded her alleged conduct fell within the prohibition of Iowa Code section 715.6, not 321A.32(3).

Koplin waived a jury and her trial to the court was based largely on a stipulated record that included the minutes of testimony attached to the trial information. Koplin's trial counsel carefully preserved the issues originally raised in the motion to adjudicate law points by motions for judgment of acquittal and for new trial.

Trial court found the State had presented sufficient proof of FUFI and sentenced Koplin to a term not to exceed two years, which was suspended.

In this appeal Koplin reasserts the issue that Iowa Code section 321A.32(3), not 715.-6, is applicable in this situation. As a fallback defense she asserts that even if Iowa Code section 715.6 is applicable, the State did not produce sufficient evidence to convict her.

I. Koplin's first issue poses a question of statutory construction. The principles generally applicable to questions of statutory construction are well established. In essence, "[t]o ascertain the legislative intent, we look to the spirit of the statute as well as the words and give [the statute] a 'sensible, workable, practical, and logical construction.'" *State v. Bartusek*, 383 N.W.2d 582, 583 (Iowa 1986) (quoting *Hansen v. State*, 298 N.W.2d 263, 265–66 (Iowa 1980)); *see* Iowa Code § 4.4 (1985).

We are confronted here with the construction of a criminal statute. As with all statutes, when a criminal statute is plain and its meaning clear, we look no farther than the express terms of the statute. *State v. Rich*, 305 N.W.2d 739, 745 (Iowa 1981). However, when ambiguities exist, criminal statutes are construed strictly with doubts resolved in favor of the defendant. *State v. Soppe*, 374 N.W.2d 649, 652 (Iowa 1985). This rule insures citizens will have fair warning of what actions are proscribed and can govern themselves accordingly. *Rich*, 305 N.W.2d at 745; *State v. Welton*, 300 N.W.2d 157, 160 (Iowa 1981). As a result, when charges plainly fall outside the fair scope and intent of a statute's terms, the statute will not be construed to encompass these charges even if the charges appear to fall within the reasons and policies underlying the statute. *State v. Davis*, 271 N.W.2d 693, 695 (Iowa 1978); *State v. Kool*, 212 N.W.2d 518, 520 (Iowa 1973).

In light of these general rules we return to the statutory provision under which Koplin was charged initially, Iowa Code section 321A.32(3). This statute is part of, and criminalizes, certain violations of Iowa's motor vehicle financial responsibility act. *See* Iowa Code §§ 321A.1–.39 (1985). In discussing this Act generally, we have stated:

> Iowa Code chapter 321A [Iowa's motor vehicle financial responsibility act] requires certain persons to post a bond with the [DOT] as a means of demonstrating financial responsibility for potential claims that may arise *from previous accidents, or as security for future encounters on the state's highways.* [*See* Iowa Code §§ 321A.5, .13, .17.] We have found the overall purpose of chapter 321A is "to protect the public from financial irresponsibility of motorists upon streets and highways."

---

**2.** In relevant part Iowa Code § 715.6 provides:
The use of a financial instrument with the intent to obtain fraudulently anything of value by a user who knows that the instrument is not what it purports to be ... constitutes the false use of a financial instrument.

**3.** A successful prosecution under Iowa Code § 321A.32(3) would result in a conviction of only a serious misdemeanor, not a § 715.6 aggravated misdemeanor. *See* Iowa Code §§ 321A.32(3), 715.6, 903.1(1)(b), 903.1(2) (1985).

*Bartusek,* 383 N.W.2d at 583 (emphasis added) (quoting *Motor Vehicle Casualty Co. v. LeMars Mutual Insurance Co.,* 254 Iowa 68, 76, 116 N.W.2d 434, 439 (1962)). Under the Act, drivers are not required to obtain insurance or other security " 'unless and until the [financial] responsibility law has been invoked by the occurrence of some event resulting in the order of a state official that security be deposited or that proof of financial responsibility be made.' " *Western Casualty and Surety Co. v. General Casualty Co. of Wisconsin,* 200 N.W.2d 892, 893 (Iowa 1972) (quoting *United States Casualty Co. v. Brock,* 345 S.W.2d 461, 464 (Tex.Civ.App.1961)); *see also Walker v. American Family Mutual Insurance Co.,* 340 N.W.2d 599, 601 (Iowa 1983).

In this case, Koplin's license was or was about to be suspended following the January 15 collision. This suspension was required by section 321A.5(1):

> The director [of DOT or designee] *shall,* immediately or within sixty days after the receipt of a report of a motor vehicle accident within this state which has resulted in bodily injury or death or damage to the property of any one person in excess of five hundred dollars, *suspend the license of each operator ... unless the operator ... shall deposit security in a sum which shall be sufficient in the judgment of the director to satisfy any judgment or judgments for damages* resulting from the accident as may be recovered against the operator....

Iowa Code § 321A.5(1) (emphasis added).

Explicit exceptions to suspension and security following an accident also are recognized by the motor vehicle financial responsibility act. *See id.* §§ 321A.5(2), .6. In this case, the parties agree the form filed by Koplin in an attempt to retain her driver's license was a general release form adopted by the DOT under Iowa Code section 321A.6. *See* 820 Iowa Admin.Code 14.4(5)(a). Section 321A.6(4) provides the requirements of security and suspension in section 321A.5 "shall not apply":

> If, prior to the date that the director would otherwise suspend license and registration or nonresident's operating privilege under section 321A.5, *there shall be filed with the director evidence satisfactory to the director that the person who would otherwise have to file security has been released from liability....*

Iowa Code § 321A.6(4) (emphasis added).

After it was discovered the release filed by Koplin contained forged signatures, Koplin was charged with violating section 321A.32(3) of the financial responsibility act. That section makes it a serious misdemeanor for any person to forge "any notice provided for under section 321A.5 that a policy or bond is in effect, or any evidence of proof of financial responsibility." *Id.* § 321A.32(3).

■ Examining the above-quoted clauses in reverse order, we conclude the general release filed by Koplin is not "evidence of proof of financial responsibility." *Id.* "Proof of financial responsibility" is a term of art defined as "[p]roof of ability to respond in damages for liability, on account of accidents *occurring subsequent to the effective date of the proof,* arising out of the ownership, maintenance, or use of a motor vehicle." *Id.* § 321A.1(10) (emphasis added).

Here, the release filed by Koplin addressed only potential liability arising out of the January 15 collision and contained no evidence of her ability to respond in damages for accidents occurring *subsequent* to the filing and approval of the release. Further, the parties agree the release was filed to comply with section 321A.6(4), dealing with exceptions to the requirement that security be filed following an accident. *See id.* §§ 321A.4–.11. Releases filed under section 321A.6 are unrelated to and are not intended to satisfy those sections of the financial responsibility act concerning proof of financial responsibility for accidents occurring in the future. *See id.* §§ 321A.12–.29.

Nor, in our opinion, was the release filed by Koplin a "notice provided for under section 321A.5." *Id.* § 321A.32(3). The

language of section 321A.32(3) obviously is limited and proscribes only the forgery of any "notice provided for under section 321A.5 that a *policy* or *bond* is in effect." *Id.* § 321A.32(3) (emphasis added). This language must be read as a direct reference to Iowa Code section 321A.5(2). That section states the requirement of security under section 321A.5 shall not apply:

> a. To such operator or owner if such owner had in effect at the time of such accident an automobile liability *policy* with respect to the motor vehicle involved in such accident;
>
> b. To such operator, if not the owner of such motor vehicle, if there was in effect at the time of such accident an automobile liability *policy* or *bond* with respect to the operator's operation of motor vehicles not owned by the operator;
>
> c. To such operator or owner if the liability of such operator or owner for damages resulting from such accident is, in the judgment of the director, covered by any other form of liability insurance *policy* or *bonds*....

*Id.* § 321A.5(2) (emphasis added). Section 321A.5(3) then goes on to provide generally that "[a] *policy* or *bond* is not effective under this section unless issued by an insurance company or surety company authorized to do business in this state." *Id.* § 321.5(3) (emphasis added).

Given the specific reference in section 321A.32(3) to notices of *policies* or *bonds* filed under section 321A.5 and the specific references in section 321A.5(2) and (3) to *policies* or *bonds*, we conclude the language "notice provided for under section 321A.5 that a policy or bond is in effect" is limited to notices filed under section 321A.5(2). It cannot be read reasonably to encompass papers filed under section 321A.6, which has nothing to do with insurance policies or bonds. Consequently, we hold the prohibition of Iowa Code section 321A.32(3) does not include the forgery of a general release filed pursuant to Iowa Code section 321A.6(4). The remaining question is whether Koplin's forgery is included within the proscription of Iowa Code section 715.6.

II. That portion of Iowa Code section 715.6 relevant here proscribes "[t]he use of a financial instrument with the intent to obtain fraudulently anything of value by a user who knows that the instrument is not what it purports to be." Iowa Code § 715.6.

We have written that the elements of FUFI are:

> (1) use of a financial instrument,
>
> (2) intent to fraudulently obtain something of value,
>
> (3) knowledge that (a) the instrument is not what it purports to be or (b) he or she is not the person or authorized agent of the person who, as shown on the instrument, has the right to so use the instrument.

*State v. Propps,* 376 N.W.2d 619, 623 (Iowa 1985) (quoting *State v. Combs,* 316 N.W.2d 880, 883 (Iowa 1982)); *see also* Iowa Code §§ 715.1–.6 (1985).

Our first inquiry is whether the release Koplin signed was a financial instrument. The Iowa Code section 715.1(1) definition of financial instrument includes "any writing which ostensibly evidences [a] ... surrender of right or claim by ... the person who has purportedly executed it." Iowa Code § 715.1(1). The release Koplin forged and filed was a writing and appeared to constitute a surrender of claim by Maysent, the person who purportedly signed the instrument. Koplin clearly forged a financial instrument.

Iowa Code section 715.2(1) relevantly provides that one "uses" a financial instrument when he or she "makes or executes such instrument or an endorsement thereon." *Id.* § 715.2(1). In forging the names on the release Koplin clearly "used" the financial instrument. The record plainly supports the first FUFI element.

It also is evident the third FUFI element was met in this case. Koplin knew the release she forged was not what it purported to be.

Finally, we examine whether the record and law will support a finding that Koplin

had "the intent to obtain fraudulently anything of value." *See id.* § 715.6. "Intent" for purposes of Iowa's FUFI statute must be established by more than the mere possession of a falsified financial instrument. *Id.* § 715.4. Here, however, Koplin did more than simply possess the release; she actually filed it with the DOT. The record reflects substantial evidence of her fraudulent intent.

Did Koplin obtain "anything of value?" The trial court, District Associate Judge Thomas R. Hronek presiding, pointed out three potential benefits Koplin intended to secure: "(1) the benefit of continuing to operate a motor vehicle lawfully, (2) the benefit of continuing to operate a motor vehicle without posting required security or proof of financial responsibility pursuant to Chapter 321A, 1985 Code and/or (3) a complete and total release of all claims and demands that Mr. Maysent has against [Koplin] as a result of the automobile accident." The court finally concluded the evidence established beyond a reasonable doubt Koplin intended "to obtain the right to operate her motor vehicle without posting security or proof of financial responsibility pursuant to Chapter 321A, 1985 Code" and the use of the forged release had "financial value to ... [Koplin]."

Turning to the degree of the offense, trial court noted that Iowa Code section 715.6 premised the degree of the offense upon the amount of "property" obtained. The court reasoned that "the obtaining of personal property is not however an element of Sections 715.1, 715.2 or 715.6 ('obtain fraudulently anything of value'), 1985 Code. [Consequently,] the term 'property' must be defined in light of those sections and is in fact synonymous with 'anything of value.' "[4]

Because the State did not present evidence of the "exact financial value" of the use of the forged release to Koplin, the court concluded the value was less than

$100. The court thus determined the offense in this instance was second degree FUFI, an aggravated misdemeanor. *See id.* § 715.6. We agree with trial court's analysis and conclusions, which tracked with the reasoning of the district court (District Associate Judge Glenn C. Sedgwick presiding) in the ruling adjudicating law points.

Koplin's forgery squarely falls within the FUFI elements identified above. She contends, however, that the district court rulings were in error because her use of the release was not in the context of a "financial or commercial transaction." It is true that those words appear in Iowa Code section 715.2(2), which specifies one of the ways a person may "use" a financial instrument:

> Tenders or offers such instrument to another in the course of a financial or commercial transaction, with the representation, either express or by implication, that the instrument is what it purports to be and that one is a person who is shown on its face to be one who may rightfully so use such instrument.

*Id.* § 715.2(2). We note, however, that the trial information filed here did not describe conduct included in Iowa Code section 715.-2(2), but rather conduct identified in section 715.2(1) ("[m]akes or executes such [financial] instrument"). The information alleged Koplin "did execute endorsements of other persons on a writing which purports to evidence a surrender of right or claim by another."

Koplin's brief quotes and relies heavily on the following from our decision in *State v. Propps:*

> We have said "[t]he goal [of the FUFI statute] was to combine in one offense all crimes which have a similar type of adverse impact on the integrity of the financial system, and to provide a single penalty for all such equally culpable

---

4. Trial court's reasoning is reinforced by the definition of "property" found in Iowa Code § 702.14 (1985):

   *"Property"* is anything of value, whether publicly or privately owned. The term in-

cludes both tangible and intangible property, labor and services. The term includes all that is included in the terms "real property" and "personal property."

acts." *State v. Schoelerman,* 315 N.W.2d·67, 73 (Iowa 1982). It has been noted that the purpose of the FUFI statute was to "expand the scope of the crime forgery, by including within it various types of fraud committed by the use of the instruments and devices which are used in place of money or property in commercial transactions...." 4 J. Yeager & R. Carlson, *Iowa Practice: Criminal Law and Procedure* § 352, at 92 (1979).

376 N.W.2d at 622. We note in passing that the *Propps* language cannot be interpreted so narrowly as Koplin contends. Although the court's quotation from the text of the Yeager and Carlson treatise appears applicable to the Iowa Code section 715.2(2) "tender or offer" situation involved in *Propps,* it also is apparent the financial instruments described in section 715.1 include wills, trademarks, and perhaps other instruments which ordinarily are not considered as "used in place of money or property in commercial transactions."

■ In any event, we hold trial court was right in concluding the evidence established Koplin fully intended to have the forged instrument accepted as a full release and thus avoid the bonding and security requirements of Iowa Code chapter 321A. Broadly viewed, the events may be characterized as a financial transaction. Koplin's conduct falls squarely within the express terms of the statute, *State v. Rich,* 305 N.W.2d 739, 745 (Iowa 1981),[5] the elements of the crime were established, and we are not persuaded to limit those provisions of Iowa Code chapter 715 implicated here by unnecessary judicial construction.

We affirm the judgment entered by the district court.

AFFIRMED.

---

5. We wrote in *Rich,* 305 N.W.2d at 745:
When a statute is plain and its meaning is clear ... courts are not permitted to search

for meaning beyond its express terms.