**STATE of Iowa, Appellee,**

v.

**Greg and Karen TRUCKE, Appellants.**

**No. 86–530.**

Supreme Court of Iowa.

Aug. 19, 1987.

Michael P. Farris, Washington, D.C., and David J. Siegrist, Britt, for appellants.

Thomas J. Miller, Atty. Gen., and Merle Wilna Fleming, Asst. Atty. Gen., for appellee.

NEUMAN, Justice.

We granted discretionary review to defendants Greg and Karen Trucke to consider their challenges to Iowa's compulsory education law, section 299.1 (1985). Each defendant has been charged and convicted on two counts of the simple misdemeanor offense of failure to cause their children to attend public school or, in the alternative, to obtain equivalent instruction by a certified teacher. *See* §§ 299.1, 299.6. Although defendants challenge the enforcement of section 299.1 on the ground that it violates their rights under the first and fourteenth amendments to the United States Constitution, we recognize a duty to avoid constitutional questions when the merits of a case may be fairly decided without facing them. *In Interest of J.A.N.*, 346 N.W.2d 495, 498 (Iowa 1984). Because it is apparent from the face of the complaints filed against the defendants that the State not only failed to charge an offense under section 299.1, but at the time the prosecution commenced no crime had yet been committed, the judgment and sentence of the district court based on those complaints must be reversed.[1]

Section 299.1 requires the parent of a child aged seven to sixteen to cause that child "to attend some public school for at least one hundred twenty days in each school year, commencing with the first week of school after the first day of September." The statute goes on to provide that "[i]n lieu of such attendance such child may attend upon equivalent instruction by a certified teacher elsewhere." Violation of the statute constitutes a simple misdemeanor. § 299.6. Because the statute is penal in nature, we construe its terms strictly against the State. *State v. Koplin*, 402 N.W.2d 423, 425 (Iowa 1987); *State v. Soppe*, 374 N.W.2d 649, 652 (Iowa 1985).

The record in this case reveals that during the 1984–85 school year defendants' children, Shawn and Wendy, attended public school. However, beginning with the fall 1985 school term, Karen Trucke began teaching her children at home with the assistance of a certified teacher, Susan Goodenow, who instructed the children approximately four hours per week.

After correspondence between the school superintendent and the Truckes failed to satisfy the school district that defendants were in compliance with the equivalent instruction exception to section 299.1, criminal prosecution was commenced. Complaints filed October 1, 1985, charged that "on the 30th day of September, 1985" Greg and Karen Trucke violated sections 299.1

---

1. Defendants' failure to preserve error on this ground for reversal has not been waived. Iowa Rule of Criminal Procedure 10(2)(b) provides that defenses or objections based on defects in the information must be raised before trial unless the information "fails ... to charge an offense ... which objection shall be noticed by the court at any time...." Federal courts interpreting the federal counterpart to rule 10(2)(b) have held that, like lack of subject matter jurisdiction, failure to charge an offense may be raised *sua sponte* by the court at any time. *See* Fed.R.Crim.P. 12(b)(2); *United States v. Purvis,* 580 F.2d 853, 858 (5th Cir.1978), *cert. denied,* 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1979); *United States v. Manuszak,* 234 F.2d 421, 423 (3d Cir.1956).

and 299.6 with respect to the schooling of Shawn and Wendy.

Trial by magistrate resulted in conviction on all four counts. On appeal to the district court, the convictions were upheld. In its opinion, the district court held that the State proved the following facts beyond a reasonable doubt:

1. The defendants are the parents of two children, Shawn Trucke and Wendy Trucke, and the defendants have control of their children.

2. Shawn Trucke and Wendy Trucke are over seven and under sixteen years of age.

3. Shawn Trucke and Wendy Trucke are in proper physical and mental condition to attend school.

4. Shawn Trucke and Wendy Trucke did not attend any public school on September 30, 1985, or on any prior day during the 1985–1986 school year.

5. On September 30, 1985, and on all prior days during the 1985–1986 school year Shawn Trucke and Wendy Trucke received no instruction other than instruction received in a home school.

6. The defendants were the teachers who provided most of the instruction in the home school.

7. Neither of the defendants is a certified teacher.

Conceding that the term "equivalent instruction" may be unconstitutionally vague,[2] the district court premised its ultimate finding of guilt "on the defendants' failure to have their children attend a school which provides instruction by a certified teacher for at least one hundred twenty days during the school year."

We have no quarrel with the facts found by the district court, and we accept without deciding the correctness of its interpretation that the statutory alternative requires 120 days of instruction by a certified teacher. However, we disagree with the court's prospective application of the statute to these defendants based on complaints which, on their faces, fail to adequately charge an offense under section 299.1.

Contrary to the meaning given the statute by the district court, the statute does not require parents to send their children to a school which provides 120 days of acceptable instruction. By its clear language, the statute requires parents to send their children to public school "for at least one hundred twenty days in each school year ... commencing the first day of September," or the parents must provide some legally acceptable alternative. Even if we assume *arguendo* that the statutory alternative also requires 120 days instruction, *no* parent—including the Truckes—could be in compliance with the statute by September 30 of any given school year, inasmuch as only thirty days of the school year has passed. Excluding weekends and holidays, the Truckes still had approximately 220 days left in the year to comply with the statute.

Hypothetically, a case might arise in which the State could prove the impossibility of meeting the 120–day requirement given the remaining days of the school year. No such attempt was made here. Instead, the record before us on appeal reveals that an essential element of the offense (120 days school attendance) was completely omitted from the charging instrument and the criminal culpability of the defendants was thus determined upon what amounts to no more than their anticipated violation of the statute.

In *Johnson v. Charles City* we recognized that education is "perhaps the most important function of state and local government." 368 N.W.2d at 74 (citing

---

**2.** In *Johnson v. Charles City Community Schools Board,* 368 N.W.2d 74, 80 (Iowa 1985), *cert. denied,* 474 U.S. 1033, 106 S.Ct. 594, 88 L.Ed.2d 574 (1985) we alluded to such a challenge, observing that "[w]hen the state fails to adequately set necessary minimum standards for private religious schools, the patrons are presented with a ready defense to truancy charges." The United States Court of Appeals for the Eighth Circuit recently confirmed our view, holding the undefined "equivalent instruction" requirement unconstitutionally vague. *Fellowship Baptist v. Benton,* 815 F.2d 485, 495–96 (8th Cir.1987). As noted by the court of appeals, the State has since promulgated regulations entitled "Equivalent Instructions Standards" which became effective February 6, 1986. *See* 670 Iowa Admin. Code ch. 63.1–4.

*Brown v. Bd. of Educ.*, 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873, 880 (1954). But where criminal sanctions are invoked to further this noble purpose, the State cannot dispense with adherence to fundamental rules of criminal procedure. Where, as here, elements such as time and the means by which an offense is committed are material ingredients of the offense, the charging document must so state. Iowa R.Crim.P. 4(7)(c) and (d); 5(5); 33; 36(3); *United States v. Manuszak*, 234 F.2d at 423; *United States v. Purvis*, 580 F.2d at 858. The complaints here do not meet that standard and erroneously led to convictions based on crimes not yet committed.

The case is remanded to the district court for entry of an order dismissing the prosecutions.

REVERSED AND REMANDED.

All Justices concur except HARRIS J., and REYNOLDSON, C.J. and McGIVERIN, J., who dissent.

HARRIS, Justice (dissenting).

An appellate court can react to a poorly drafted statute in either of two ways. It can seize upon the awkward language, give it an impractical interpretation and blame the resulting devastation on the legislature. Or it can seek out the legislative intent in a reasonable and practical manner. There is ample precedent for either course. But, especially when the stakes are highest, we should read the words in an effort to further, and not to trip up, the clear legislative purpose.

There is nothing unclear about the legislative purpose here and it is impossible to overstate its importance. The purpose is to compel school attendance for all Iowa children. Iowans have long attached supreme importance to the development of the minds of our children. Through the legislative process we reached a societal judgment that a basic education is every child's birthright and that this right takes precedence over the conflicting wishes of the child or the child's parents.

Without challenging this goal the majority concludes it must be destroyed because the statute stumbles over its own language. I have no idea how many children will be denied minimum educational requirements by this conclusion, but for them the tragedy is incalculable.

A courtroom is no fit place to set minimal educational standards; our society has assigned experts to that task. *Johnson v. Charles City Community School Bd. of Educ.*, 368 N.W.2d 74, 80 (Iowa), *cert. denied*, 474 U.S. 1033, 106 S.Ct. 594, 88 L.Ed.2d 574 (1985). Whatever the standards are, it is certain the legislature intended for each child to have advantage of them before facing up to the stern challenges of our highly complex and competitive society. Given a choice, we should not deny children this crucial preparation merely because we (not they or their parents) perceive some explainable flaw in the statutory word scheme.

Under the majority's gratuitous interpretation of Iowa Code section 299.1 criminal responsibility for parents of a truant will be withheld each year until that whole year's education has become lost to the child. In other words, because there can be no violation of the statute until less than 120 days remain in the school year, the child necessarily will be unable to attend school the 120 days required to allow him or her to progress to the next grade. He or she will thus remain in that same grade the following school year. But when the next school year begins, the statute will not be violated until, again, less than 120 days remain in the school year, and, again, the child will not move on.

The compulsory attendance law is thus completely gutted. Anything left is meaningless because attendance cannot be required during any current school year. The upshot of this interpretation is grossly impractical. I do not understand the majority to contend otherwise. Rather the majority's position is that the fault is with the legislature, not with us. With the majority decision, though, we share in the blame.

We should apply the standard rule of statutory interpretation:

We must construe [the statute] with the other provisions relating to the same subject and seek to harmonize them if possible. We have a duty to consider the objects sought to be accomplished and attempt a reasonable construction of the provisions that will give effect to their purposes. We must avoid a strained, impractical or absurd construction.

*Matter of the Estate of Keegan,* 369 N.W.2d 447, 449–50 (Iowa 1985).

Under this standard, we are not bound to subscribe to the interpretation adopted by the majority. A much more rational course is to read the statute in the spirit of its purpose.

The section provides:

A person having control of a child over seven and under sixteen years of age, in proper physical and mental condition to attend school, shall cause the child to attend some public school for at least 120 days in each school year, commencing no sooner than the first day of September, unless the board of school directors establishes a later date, which date shall not be later than the first Monday in December.

The board may, by resolution, require attendance for the entire time when the schools are in session in any school year.

In lieu of such attendance such child may attend upon equivalent instruction by a certified teacher elsewhere.

Iowa Code § 299.1 (1987).

I agree with the observation "[i]t is the recalcitrance of the person in control or charge of a child or children which constitutes the offense." 79 C.J.S. *Schools and School Districts* § 463 (1952).

Two questions are involved in the statute's attendance requirement. When must attendance commence? How much attendance is required?

The first question is addressed by the first sentence of the statute. Children shall attend school commencing on a date set by the school board, no sooner than September 1st (though they may set the date as late as the first Monday of December).

I think children obtaining equivalent instruction are bound by the commencement date set by the school directors. There is no provision that children covered by the statute can look to any other date. The first sentence of the statute purports to apply to all children and authorizes no one but school directors to set time for commencement of classes.

The statute requires regular but not perfect attendance. Under the majority's interpretation the child could not be made to attend school until there remained less than 120 calendar days prior to the commencement of the next school year. This would require attendance for only the last two or three weeks of a regular school year.

It is preposterous to suggest the legislature intended to call for compulsory school attendance, and in the same provision withheld enforcement until there were less than 120 calendar days left in the school year. The only way the provision can be given practical effect is to interpret it as requiring regular attendance, with the 120 day requirement being the minimum standard. It is analogous to the manner the New Jersey supreme court applies its truancy statute. It is incumbent upon the parent who chooses an alternative to public school to introduce evidence in support of the claim of equivalent instruction. *State v. Massa,* 95 N.J.Super. 382, 385–88, 231 A.2d 252, 254–55 (1967); *State v. Vaughn,* 44 N.J. 142, 146–47, 207 A.2d 537, 540 (1965) ("As a matter of good sense, it is both reasonable and necessary that these alternatives be matters of exception or excuse to be raised by the defendant ...").

The minimum days of a school year are set at 180. 670 Iowa Admin.Code § 3.3(5). Under Iowa Code section 299.1 a child is required to attend school on a regular basis. Some leeway is accorded for absence but the child must attend school for at least 120 days. When, as here[3], it is

---

**3.** The children here had been absent a full    month when the charges were filed and two and

shown that a child is not attending school at all and intends not to in the future, a prima facie case is made that the child will not attend 120 days during the current school year. At such a point it should be defendants' burden to produce evidence from which the trier of fact could deduce the total absences will not amount to more than sixty days (the difference between the 120 required by section 299.1 and the 180 available under the regulation).

The majority characterizes such an interpretation as an anticipatory violation of the statute. I think not. Truancy in this case is in full bloom. And the interpretation I suggest, whatever its weaknesses, strikes me as greatly more rational, and more in accord with legislative intent, than the majority's wholesale dismantling of compulsory education.

The majority cites and relies on the principle that, when possible, we avoid answering constitutional questions. This is a good and venerable rule but should not call for the ultimate application the majority accords it. It is wrong to go so far as voiding a statute in order to avoid a constitutional question. I would address the merits of defendants' constitutional challenge.

REYNOLDSON, C.J., and McGIVERIN, J., join this dissent.

one-half months at the time of trial. Defendants insisted at trial the absences were to con-