Belknap,
May 7, 1929.

STATE *v.* OSCAR HOYT.

SAME *v.* RICHARD DANIELS.

SAME *v.* LUCIUS COVEY.

SAME *v.* TRUMAN COVEY.

*Theo S. Jewett,* solicitor, for the state.

*Henry D. Yeaton,* for the defendants.

PEASLEE, C. J.   The constitutionality of the compulsory school attendance statute (P. L., *c.* 118, *ss.* 1, 2) has not been considered to be an open question in this state. *State* v. *Jackson,* 71 N. H. 552. "Free schooling furnished by the state is not so much a right granted to pupils as a duty imposed upon them for the public good. If they do not voluntarily attend the schools provided for them, they may be compelled to do so." *Fogg* v. *Board of Education,* 76 N. H. 296, 299.

Education in public schools is considered by many to furnish desirable and even essential training for citizenship, apart from that gained by the study of books. The association with those of all classes of society, at an early age and upon a common level, is not unreasonably urged as a preparation for discharging the duties of a citizen. The object of our school laws is not only to protect the state from the consequences of ignorance, but also to guard against the dangers of "incompetent citizenship." *Fogg* v. *Board of Education, supra.*

This locally adopted theory of the power of the state over this subject has been somewhat limited by recent decisions of the supreme court of the United States. Prohibition of teaching the German language to children under fourteen, unless they have completed eighth-grade work, was declared to be an infringement of the guaranty of liberty found in the fourteenth amendment to the constitution of the United States. *Myer* v. *Nebraska,* 262 U. S. 390; *Bartels* v. *Iowa,* 262 U. S. 404, *Holmes* and *Sutherland,* JJ., *dissenting.*

A statute requiring all children to attend the public school was declared invalid for a like reason. *Pierce* v. *Society,* 268 U. S. 510.

But it was also said in this case that no question was raised as to "the power of the State reasonably to regulate all schools, to inspect, supervise and examine them, their teachers and pupils; to require that all children of proper age attend some school, that teachers shall be of good moral character and patriotic disposition, that certain studies plainly essential to good citizenship must be taught, and that nothing be taught which is manifestly inimical to the public welfare." *Ib.*, 534.

While these decisions declare the existence of important restrictions upon state power to compel education, there is nothing in them to indicate that the provisions of our statute offend against the federal guaranty of liberty. Under the interpretation of the guaranty, so far as it has been declared, it appears that attendance at some school may still be required, and that the state may supervise the school attended. The power to supervise necessarily involves the power to reject the unfit, and to make it obligatory to submit to supervision. The local statute does not go beyond these requirements.

The state being entitled to supervise education, it is not an answer to a charge of failure to furnish supervised instruction to show that equivalent unsupervised instruction is given. Unless the idea of personal liberty in the matter of educating children, recently developed in the federal decisions, is to be carried to the extreme of saying that the sole obligation that can be imposed upon the parent is to educate, a provision that approval of the parent's method must be obtained by him is not invalid. As those authorities are understood, they do not deny the power of the state to insist upon an approval of the proposed substitute for public school attendance. They do not limit that power to a mere right to inspect what is being done and to prosecute for deficiencies. Reasonable preventive measures may be taken, as well as curative ones. And in this connection a reasonable requirement for submitting the proposed substitute for approval, in advance of putting it into use, may be imposed.

The defendants' claim that the federal guaranty of liberty enables them to set at defiance any attempt of the state to prescribe the means for ascertaining the sufficiency of educational facilities furnished and to be furnished as a substitute for the public school, goes far beyond anything that has been decided to be the law. The declaration in *Pierce* v. *Society*, 268 U. S. 510, 534, that "no question is raised" as to certain matters, is understood to mean, or at least to suggest that power relating thereto remains in the state. In any event, it must mean that lack of such power is neither declared nor indicated.

The matters so enumerated include all that are involved in this litigation. The power "reasonably to regulate," to require attendance, good character of teachers, studies to be taught and those to be prohibited, all look to laying down rules for future conduct. As the statute does not exceed the exercise of these powers, it is held to be constitutional.

In the adjustment of the parent's right to choose the manner of his children's education, and the impinging right of the state to insist that certain education be furnished and supervised, the rule of reasonable conduct upon the part of each towards the other is to be applied. The state must bear the burden of reasonable supervision, and the parent must offer educational facilities which do not require unreasonable supervision.

If the parent undertakes to make use of units of education so small, or facilities of such doubtful quality, that supervision thereof would impose an unreasonable burden upon the state, he offends against the reasonable provisions for schools which can be supervised without unreasonable expense. The state may require, not only that educational facilities be supplied, but also that they be so supplied that the facts in relation thereto can be ascertained, and proper direction thereof maintained, without unreasonable cost to the state. Anything less than this would take from the state all efficient authority to regulate the education of the prospective voting population.

If any substantial supervisory power remains to the states, it is not perceived how it could well be reduced below the minimum required here. This bears no resemblance to the "affirmative direction concerning the intimate and essential details of such schools," which was held to be invalid in *Farrington* v. *Tokushige*, 273 U. S. 284.

Although the defendants' brief is prefaced by a declaration that the constitutional question is the only one raised by the case, much of the argument which follows is upon the construction of the statute. The claim made is that furnishing equivalent book-learning is an answer to a charge of failing to cause a child to attend school. The statute makes no such exception to the duty imposed. The only substitute for the public school is an approved private school. P. L., c. 118, s. 1.

If the defendants' allegations that "said child was taught by a private tutor in his own home" could be construed to set forth attendance at a private school (see *State* v. *Counort*, 69 Wash. 361), there is no allegation that the enterprise has been designated as a private school "to be treated as approved within the meaning of this

title." P. L., c. 116, s. 11, par. xxviii. Not having been approved as required by the statute, it is not "an approved private school." P. L., c. 118, s. 1.

Decisions from other jurisdictions, which are based upon statutes making the attainment of certain proficiency by the child, or furnishing a certain amount of instruction, an excuse for non-attendance at the public school (*Commonwealth* v. *Roberts*, 159 Mass. 372; *Bevan* v. *Shears*, [1911] 2 K. B. 936), are not applicable here, because our statute makes no such exception. However accomplished or precocious the child may be, school attendance until he is fourteen years old is required. The exception because of knowledge acquired applies only to those between fourteen and sixteen (P. L., c. 118, s. 1); and the other excuses for non-attendance there provided are immaterial in the present case.

Varying the statement a little, the argument is advanced that the only object of the statute is to compel a certain amount of proper instruction and study, and that proof thereof is an answer to the charge in any event. This claim fails to take into account the true nature of the charge. While the ultimate object of the statute is the education of the child, means to assure the attainment of that end may be adopted by the state, and may be enforced by the imposition of penalties for violating the regulations made. As stated earlier in this opinion, the state is entitled to establish a system whereby it can be known, by reasonable means, that the required teaching is being done.

The statement of defence, in the motions to dismiss the complaints, does not allege a compliance with the statute. In accordance with the agreement of the parties as to the disposition of the cases, the order is

*Defendants fined $10 each.*

All concurred.