Appellate Department, Superior Court, Los Angeles

[Crim A. No. 3026. Nov. 24, 1953.]

THE PEOPLE, Respondent, v. WILLIAM TURNER et al.,
Appellants.

James C. Ingebretsen for Appellants.

Ray L. Chesebro, City Attorney (Los Angeles), Donald M. Redwine, Assistant City Attorney, and Dan J. Whiteside, Deputy City Attorney, for Respondent.

PATROSSO, J.—Defendants were convicted of violating section 16601 of the Education Code in that they neglected and refused to send their three children to a public school, and each was sentenced to pay a fine of $10 on each of three counts. The section in question reads as follows: "Each parent, guardian, or other person having control or charge of any child between the ages of eight and 16 years, not exempted under the provisions of this chapter, shall send the child to the public full-time day school for the full time for which the public schools of the city, city and county, or school district in which the child resides are in session."

Section 16621 of the same code provides: "The classes of children described in this article shall be exempted by the

proper school authorities from the requirements of attendance upon a public full-time day school." And this in turn is followed by six sections specifying the persons exempted from the provisions of section 16601, with only two of which we are concerned, i.e., 16624 and 16625, which read as follows: "16624. Children who are being instructed in a private full-time day school by persons capable of teaching shall be exempted. Such school shall be taught in the English language and shall offer instruction in the several branches of study required to be taught in the public schools of the State. The attendance of the pupils shall be kept by private school authorities in a register, and the record of attendance shall indicate clearly every absence of the pupil from school for a half day or more during each day that school is maintained during the year." "16625. Children not attending a private full-time day school, and who are being instructed in study and recitation for at least three hours a day for 170 days each calendar year by a private tutor or other person, in the several branches of study required to be taught in the public schools of this State and in the English language shall be exempted. The tutor or other person shall hold a valid State credential for the grade taught. The instruction shall be offered between the hours of 8 o'clock a. m. and 4 o'clock p. m."

Defendants first contend that the complaint here does not charge a public offense for the reason that it does not allege that the children were not within any of the classes exempted from the requirement of attendance at public school by the provisions of sections 16622 to 16627. We do not agree. As said by this court in *People* v. *Fowler*, 32 Cal.App.2d Supp. 737, 742 [84 P.2d 326], the general rule is that "it is not necessary in a criminal charge to negative an exception or proviso which is not a part of the definition or description of the offense. (Citing cases.) Of every complaint which does not negative such a proviso or exception, it is possible to say (as do the defendants here) that all the facts alleged in it may be true and still the defendant may be entirely innocent of crime. But such complaints are, nevertheless, held sufficient by the authorities just referred to and many others which could be cited." Here the exemptions from, or exceptions to, section 16601, found in the subsequent sections to which reference has been made, do not constitute part of the definition or description of the offense, which is the failure of parents to send their children to a public school.

Defendants' main contention, however, is that the statute in question is unconstitutional in that it deprives parents of the right to determine how and where their children may be educated. There can be no doubt that if the statute, without qualification or exception, required parents to place their children in public schools, it would be unconstitutional. *(Pierce* v. *Society of Sisters* (1925), 268 U.S. 510 [45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468].) The statute here, however, unlike that involved in the case cited, does not so provide. It recognizes the right of parents not to place their children in public schools if they elect to have them educated in a private school or through the medium of a private tutor or other person possessing certain specified qualifications. We see no basis therefore upon which to predicate a holding of unconstitutionality unless such a holding is compelled because the statute denies the right of parents to educate their children unless such parents possess the qualifications prescribed therein. Contrary to the contention of the defendants, we see nothing in the Pierce case so declaring or intimating. On the contrary, Mr. Justice McReynolds, the author of the opinion in that case, was at pains to observe (268 U.S. 534 [45 S.Ct. 571, 69 L.Ed. 1077, 39 A.L.R. 475]) : "No question is raised concerning the power of the state reasonably to regulate all schools, to inspect, supervise, and examine them, their teachers, and pupils; *to require that all children of proper age attend some school,* that teachers shall be of good moral character and patriotic disposition, that certain studies plainly essential to good citizenship must be taught, and that nothing be taught which is manifestly inimical to the public welfare.'' (Emphasis added.)

 The question here, therefore, may be narrowed down as to whether or not it is within the competency of the state to require parents to place their children in public schools or, in the alternative, a private school meeting certain prescribed conditions, or that the children be instructed by a private tutor or other person possessing qualifications and in the manner prescribed by section 16625. We believe that the answer must be in the affirmative. Without unduly extending this opinion by a detailed reference to the many cases dealing with statutes of this character, most of which are collated in the annotations in 14 A.L.R.2d 1364, 39 A.L.R. 477, 41 L.R.A.N.S. 95, we think the reasons for this conclusion are well stated in *State* v. *Hoyt* (1929), 84 N.H. 38 [146

A. 170], where the court upheld the constitutionality of a statute which required that children be educated either in a public school or an approved private school. In rejecting the claim that the statute was invalid insofar as it prohibited instruction in the home by the parents or a private tutor, the court, after quoting the language of Mr. Justice Mc-Reynolds, in *Pierce* v. *Society,* set forth above, says (146 A. 171) : ''The defendants' claim that the federal guaranty of liberty enables them to set at defiance any attempt of the state to prescribe the means for ascertaining the sufficiency of educational facilities furnished and to be furnished as a substitute for the public school, goes far beyond anything that has been decided to be the law. The declaration in *Pierce* v. *Society,* 268 U.S. 510, 534 [45 S.Ct. 571, 573, 69 L.Ed. 1070, 39 A.L.R. 468], that 'no question is raised' as to certain matters, is understood to mean, or at least to sug-gest, that power relating thereto remains in the state. In any event, it must mean that lack of such power is neither declared, nor indicated.

''The matters so enumerated include all that are involved in this litigation. The power 'reasonably to regulate,' to require attendance, good character of teachers, studies to be taught, and those to be prohibited, all look to laying down rules for future conduct. As the statute does not exceed the exercise of these powers, it is held to be constitutional.

 ''In the adjustment of the parent's right to choose the manner of his children's education, and the impinging right of the state to insist that certain education be furnished and supervised, the rule of reasonable conduct upon the part of each towards the other is to be applied. The state must bear the burden of reasonable supervision, and the parent must offer educational facilities which do not require un-reasonable supervision.

 ''If the parent undertakes to make use of units of education so small, or facilities of such doubtful quality, that supervision thereof would impose an unreasonable burden upon the state, he offends against the reasonable provisions for schools which can be supervised without unreasonable expense. The state may require, not only that educational facilities be supplied, but also that they be so supplied that the facts in relation thereto can be ascertained, and proper direction thereof maintained, without unreasonable cost to the state. Anything less than this would take from the state

all-efficient authority to regulate the education of the prospective voting population.''

It is not without significance that, although it has been said that ''only eleven of the forty-eight states permit by statute that instruction may be given at home by their parent or tutor,'' and ''such home instruction moreover is specifically conditioned except in two states'' (Parental Right in Educational Law, Loughery, Catholic University of America Press, 1952), we have been unable to find a single case in which it has been held that so-called compulsory attendance statutes are rendered unconstitutional and void merely by reason of a failure to recognize home instruction as an alternative to attendance in the public schools.

Nor do we see any merit in the claim of defendants that the statute under consideration is unreasonable or arbitrary in that, while exempting private schools, it does not require teachers therein to ''hold a valid state credential for the grade taught,'' but a private tutor or other person in order to be exempted under section 16625 must possess such a certificate. If, as we have seen, the state might have refused to grant an exemption in the case of children being instructed at home by their parents or a private tutor without rendering the statute vulnerable to the charge of unconstitutionality, we see no reason why objection can be raised to a statute which, while granting an exemption in such cases, conditions the same by requiring such parents or tutors to possess certain qualifications even if these be stricter than those required of teachers in private schools. In the light of this, defendants may not be heard to assert that they have been discriminated against because the Legislature conditioned the exemption granted to private instruction outside of a public or private school by requiring persons so undertaking to teach outside of such schools to possess qualifications different from those prescribed for teachers in private schools. Were it otherwise, however, it may not be said that there is not a reasonable basis for the distinction in question. The most obvious reason for such difference in treatment is that pointed out in *Hoyt* v. *State, supra,* namely, the difficulty in supervising without unreasonable expense a host of individuals, widely scattered, who might undertake to instruct individual children in their homes as compared with the less difficult and expensive supervision of teachers in organized private schools. Also the Legislature might reasonably have concluded that teachers in private schools would be under direct super-

vision of their school authorities at all times, and that the interests of the persons conducting the same would compel the maintenance of the required standard of instruction by competent instructors for otherwise the school would fail to qualify for the exemption granted thereby, and without pupils it could not continue to exist.

We likewise fail to find any merit in defendants' claim that they come within the classification of a "private school" within the meaning of section 16624 and hence are exempted from the operation of the statute. The contrary was held in *State* v. *Counort* (1912), 69 Wash. 361 [124 P. 910, 911, 41 L.R.A.N.S. 95] ; *State* v. *Will* (1916), 99 Kan. 167 [160 P. 1023] ; *State* v. *Hoyt, supra.* **[12]** Moreover, a mere reading of sections 16624 and 16625 clearly indicates that the Legislature intended to distinguish between private schools, upon the one hand, and home instruction by a private tutor or other person, on the other. If a "private school" as that term is used in section 16624 necessarily comprehends a parent or private tutor instructing at home, there was no necessity to make specific provision exempting the latter. We are not unmindful of the fact that a different conclusion was reached in *People* v. *Levisen,* 404 Ill. 574 [90 N.E.2d 213, 14 A.L.R.2d 1364]. The statute there, however, unlike our own, while exempting private and parochial schools, did not grant such exemption to instruction at home or by private tutor. Thus it did not upon its face indicate a legislative intent to distinguish between the two. Aside from this, the opinion is far from persuasive. In a thoughtful article discussing this case, in 18 University of Chicago Law Review, page 105, it is said: "The majority's construction of the statute is unsupported not only by ordinary connotations of the term 'private school' but also by the legislative history of the compulsory attendance law. The original act did provide for home instruction, but subsequent amendments clearly indicate an intent to repeal this exception to the public school attendance provision."

For like reasons, we find ourselves unable to agree with the similar holding in *State* v. *Peterman* (1904), 32 Ind.App. 665 [70 N.E. 550], upon which the holding in the Levisen case is predicated.

Thus we are brought to the final contention of the defendants that inasmuch as they claim that the instruction given to their children is as good or better than that obtainable in a public or private school or through the medium of a

person possessing the qualifications set forth in section 16625, the purpose of the statute, which is said to be simply to require an adequate education and not one conducted in a particular manner or place, has been fully satisfied. The complete answer to this is also to be found in the Hoyt case, from which we again take the liberty of quoting (p. 172): "The claim is that furnishing equivalent book-learning is an answer to a charge of failing to cause a child to attend school. The statute makes no such exception to the duty imposed. The only substitute for the public school is an approved private school. P.L.c.118, sec. 1.

"If the defendants' allegations that 'said child was taught by a private tutor in his own home' could be construed to set forth attendance at a private school (see *State* v. *Counort*, 69 Wash. 361 [124 P. 910, 41 L.R.A.N.S. 95]), there is no allegation that the enterprise has been designated as a private school 'to be treated as approved within the meaning of this title.' P.L.c.116, sec. 11, par. XXVIII. Not having been approved as required by the statute, it is not 'an approved private school.' P.L.c.118, sec. 1.

"Decisions from other jurisdictions, which are based upon statutes making the attainment of certain proficiency by the child, or furnishing a certain amount of instruction, an excuse for nonattendance at the public school (*Commonwealth* v. *Roberts*, 159 Mass. 372 [34 N.E. 402] ; *Bevan* v. *Shears* (1911), 2 K.B. 936), are not applicable here, because our statute makes no such exception. . . .

"Varying the statement a little, the argument is advanced that the only object of the statute is to compel a certain amount of proper instruction and study, and that proof thereof is an answer to the charge in any event. This claim fails to take into account the true nature of the charge. While the ultimate object of the statute is the education of the child, means to assure the attainment of that end may be adopted by the state, and may be enforced by the imposition of penalties for violating the regulations made. As stated earlier in this opinion, the state is entitled to establish a system whereby it can be known, by reasonable means, that the required teaching is being done."

The judgment and order denying motion for a new trial are affirmed. The appeals from the other orders are dismissed.

Shaw, P. J., and Bishop, J., concurred.