73 Cal.Rptr.3d 77 (2008)
160 Cal.App.4th 624
In re RACHEL L. et al., Persons Coming Under the Juvenile Court Law.
Jonathan L. and Mary Grace L., Petitioners,
v.
Superior Court of the State of California for the County of Los Angeles, Respondent;
Los Angeles County Department of Children and Family Services, Real Party in Interest.
No. B192878.
Court of Appeal of California, Second District, Division Three.
February 28, 2008.
As Modified March 7, 2008.
*79 Children's Law Center of Los Angeles, Cameryn Schmidt and Christine Caldwell; Lori A. Fields, under appointment by the Court of Appeal, for Petitioners.
Christopher Blake, under appointment by the Court of Appeal, San Diego, for father Philip L.
Aida Aslanian, under appointment by the Court of Appeal, Glendale, for mother Mary L.
No appearance for Respondent.
Raymond G. Fortner, Jr., County Counsel, Larry Cory, Assistant County Counsel and Judith A. Luby, for Real Party in Interest.
*78 CROSKEY, J.
In this dependency case (Welf. & Inst. Code, § 300), we consider the question whether parents can legally "home school" their children. The attorney for two of the three minor children in the case has petitioned this court for extraordinary writ relief, asking us to direct the juvenile court to order that the children be enrolled in a public or private school, and actually attend such a school.
The trial court's reason for declining to order public or private schooling for the children was its belief that parents have a constitutional right to school their children in their own home. However, California courts have held that under provisions in the Education Code, parents do not have a constitutional right to home school their children. Thus, while the petition for extraordinary writ asserts that the trial court's refusal to order attendance in a public or private school was an abuse of discretion, we find the refusal was actually an error of law. It is clear to us that enrollment and attendance in a public full-time day school is required by California law for minor children unless (1) the child is enrolled in a private full-time day school and actually attends that private school, (2) the child is tutored by a person holding a valid state teaching credential for the grade being taught, or (3) one of the other few statutory exemptions to compulsory public school attendance (Ed.Code, § 48220 et seq.) applies to the child. Because the parents in this case have not demonstrated that any of these exemptions apply to their children, we will grant the petition for extraordinary writ.

*80 BACKGROUND OF THE CASE

A Welfare and Institutions Code section 300 petition was filed on behalf of three minor children after the eldest of them reported physical and emotional mistreatment by the children's father. The Los Angeles County Department of Children and Family Services investigated the situation and discovered, among other things, that all eight of the children in the family had been home schooled by the mother rather than educated in a public or private school.[1]
The attorney representing the younger two children asked the juvenile court to order that the children be enrolled in a public or private school. The dependency court declined to make such an order despite the court's opinion that the home schooling the children were receiving was "lousy," "meager," and "bad," and despite the court's opinion that keeping the children at home deprived them of situations where (1) they could interact with people outside the family, (2) there are people who could provide help if something is amiss in the children's lives, and (3) they could develop emotionally in a broader world than the parents'"cloistered" setting. As noted above, the court ruled that the parents have a constitutional right to home school the children. From that ruling the attorney for the younger children seeks extraordinary writ relief.

DISCUSSION

1. California's Provisions for Compulsory Education of Minor Children

Article IX, section 1 of California's Constitution states: "A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the Legislature shall encourage by all suitable means the promotion of intellectual, scientific, moral, and agricultural improvement."
"In obedience to the constitutional mandate to bring about a general diffusion of knowledge and intelligence, the Legislature, over the years, enacted a series of laws. A primary purpose of the educational system is to train school children in good citizenship, patriotism and loyalty to the state and the nation as a means of protecting the public welfare. [Citation.] The Supreme Court of the United States, in the case of Pierce v. Society of Sisters, 268 U.S. 510 [45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468], held that: `No question is raised concerning the power of the state reasonably to regulate all schools, to inspect, supervise and examine them, their teachers and pupils; to require that all children of proper age attend some school, that teachers shall be of good moral character and patriotic disposition, that certain studies plainly essential to good citizenship must be taught, and that nothing be taught which is manifestly inimical to the public welfare.' [¶] Included in the laws governing the educational program were those regulating the attendance of children at school and the power of the state to enforce compulsory education of children within the state at some school is beyond question. (Meyer v. Nebraska, 262 U.S. 390 [43 S.Ct. 625, 628, 67 L.Ed. 1042, 29 A.L.R. 1446]; Ex parte Liddell, 93 Cal. 633, 640 [29 P. 251]." (In re Shinn (1961) 195 Cal.App.2d 683, 686-687, 16 Cal.Rptr. 165.)
*81 Full-time public school education for persons between the ages of six and eighteen is compulsory under California's compulsory education law (Ed.Code, § 48200 et seq.),[2] "and each parent, guardian, or other person having control or charge of the pupil shall send the pupil to the public full-time day school ... and for the full time designated as the length of the schoolday by the governing board of the school district" (§ 48200). Exemptions to compulsory public school education are made for, among others, children who (1) attend a private full-time day school (§ 48222) or (2) are instructed by a tutor who holds a valid state teaching credential for the grade being taught (§ 48224). These provisions of the Education Code (in their predecessor section numbers) were held to be constitutional in People v. Turner (1953) 263 P.2d 685, 121 Cal.App.2d Supp. 861, 865 et seq., ("Turner"), and an appeal to the United States Supreme Court from that decision was dismissed for want of a substantial federal question in Turner v. People of the State of California (1954) 347 U.S. 972, 74 S.Ct. 785, 98 L.Ed. 1112. Turner was cited with approval in In re Shinn, supra, 195 Cal.App.2d at p. 694, 16 Cal.Rptr. 165 ("Shinn").
In Shinn, children were found to be habitually truant and were made wards of the juvenile court because their parents violated the compulsory education laws in effect at that time. The laws were former sections 12101, 12154, and 12155, which were predecessors to current sections 48200, 48222, and 48224, respectively. (Shinn; supra, 195 Cal.App.2d at pp. 687, 693-694,16 Cal.Rptr. 165.)
In Turner, the court affirmed a judgment of conviction of parents who refused to send their children to public school and instead provided them with instruction that did not come within the exemptions to the compulsory public school education law. The appellant parents were convicted of violating former section 16601, a predecessor to current section 48200. Former sections 16624, and 16625 provided exemptions for children attending private full-time day school and children being educated by a person holding a valid teaching credential, but the parents did not make use of the exemptions. (Turner, supra, 263 P.2d 685, 121 Cal.App.2d Supp. at pp. 863-864.)
The parents in Turner contended that former section 16601 was unconstitutional because it deprived them of a right to determine how and where their children should be educated. Citing Pierce v. Society of Sisters (1925) 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, the Turner court stated the statute would be unconstitutional if it required parents to place their children in public schools and had no alternative means of education, but the court noted that former section 16601 permitted such alternative means and therefore was not unconstitutional. The court specifically rejected the argument that it is unconstitutional to require that parents possess the qualifications prescribed by statute if the parents seek to act as their children's teachers, saying that nothing in the Pierce opinion declared or intimated such a finding of unconstitutionality. (Turner, supra, 263 P.2d 685, 121 Cal.App.2d Supp. at p. 865.)
The Turner court observed that there are "many cases dealing with statutes of this character," and specifically referred to State v. Hoyt (1929) 84 N.H. 38, 146 A. 170, where the Supreme Court of New Hampshire held constitutional a statute requiring children to be educated in either a public school or an approved private school, and rejected the argument that the *82 federal guarantee of liberty permits parents to resist such state statutes by having their children educated in their own home by the parents themselves or a private tutor. (State v. Hoyt, supra, 146 A. at p. 171; Turner, supra, 263 P.2d 685, 121 Cal.App.2d Supp. at pp. 865-867.) The Turner court observed that the court in Hoyt stated it would be an unreasonable burden on the state to have to supervise each and every home in which a child was being educated. (Turner, at pp. 866-867.) The Turner court further observed it could find no cases in which a court has held that a state's failure to permit home instruction as an alternative to public school education is unconstitutional. (Id. at p. 867.)
Turner also held that the subject former statutes were neither arbitrary nor unreasonable when they required that teachers in private full-time day schools only be "persons capable of teaching" and did not have to hold a valid teaching credential for the grade being taught, but did require that a home tutor hold such a credential. The court observed that whereas it is unreasonably difficult and expensive for a state to supervise parents who instruct children in their homes, supervising teachers in organized private schools is less difficult and expensive. (Turner, supra, 263 P.2d 685, 121 Cal.App.2d Supp. at p. 867.) Moreover, it would not be unreasonable for the Legislature to conclude that teachers in private schools would be directly supervised by the persons who run the schools, and such persons would have an interest in maintaining the required standard of instruction by competent teachers so that the schools would continue to qualify for the private full-time day school exemption. (Id. at pp. 867-868.)
Additionally, the Turner court rejected, and noted that courts in other states had also rejected, the notion that parents instructing their children at home come within the private full-time day school exemption in then-section 16624 (now section 48222). The court stated that a simple reading of the statutes governing private schools and home instruction by private tutors shows the Legislature intended to distinguish the two, for if a private school includes a parent or private tutor instructing a child at home, there would be no purpose in writing separate legislation for private instruction at home. (Turner, supra, 263 P.2d 685, 121 Cal.App.2d Supp. at p. 868; accord Shinn, supra, 195 Cal. App.2d at p. 693, 16 Cal.Rptr. 165.) Moreover, even if being taught at a parent's home could be construed as attendance at a private day school, the parents in Turner had not demonstrated that their home already qualified as a private school under the requirements of the Education Code. (Turner, at p. 869.)
Nor was the Turner court persuaded by the parents' contention that the education being provided to their children in their home was as good or better than the children would have obtained in a public or private school or through a credentialed tutor, and therefore the purpose of the statutes was satisfied. The court stated California's legislative scheme makes no such exemption to attendance in a public school. (Turner, supra, 263 P.2d 685, 121 Cal.App.2d Supp. at p. 868-869; accord Shinn, supra, 195 Cal.App;2d, at p. 694, 16 Cal.Rptr. 165, where the court stated that "[h]ome education, regardless of its worth, is not the legal equivalent of attendance in school in the absence of instruction by qualified private tutors.")
Turner was cited with approval in Board of Education v. Allen (1968) 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 ("Alien"). There, the Supreme Court stated: "Since Pierce [v. Society of Sisters was decided], a substantial body of case law has confirmed the power of the States to insist *83 that attendance at private schools, if it is to satisfy state compulsory-attendance laws, be at institutions which provide minimum hours of instruction, employ teachers of specified training, and cover prescribed subjects of instruction. Indeed, the State's interest in assuring that these standards are being met has been considered a sufficient reason for refusing to accept instruction at home as compliance with compulsory education statutes. These cases were a sensible corollary of Pierce v. Society of Sisters: if the State must satisfy its interest in secular education through the instrument of private schools, it has a proper interest in the manner in which those schools perform their secular educational function." (Id., 392 U.S. at pp. 245-247, 88 S.Ct. 1923 fns. omitted.) The Allen court cited Turner as a case in which home instruction was rejected as a means of complying with a state's compulsory education laws. (Id. at p. 247, fn. 8, 88 S.Ct. 1923.) Moreover, as noted above, the appeal to the United States Supreme Court by the parents in Turner was dismissed for want of a substantial federal question.[3]
The Legislature has not amended the substantive aspects of the compulsory education statutes that were analyzed in Turner and Shinn. Like those courts, we find no reason to strike down the Legislature's evaluation of what constitutes an adequate education scheme sufficient to promote the "general diffusion of knowledge and intelligence," which Article IX, section 1 of our Constitution states is "essential to the preservation of the rights and liberties of the people." We agree with the Shinn court's statement that "the educational program of the State of California was designed to promote the general welfare of all the people and was not designed to accommodate the personal ideas of any individual in the field of education." (Shinn, supra, 195 Cal.App.2d at p. 697, 16 Cal.Rptr. 165.)

2. Consequences of Parental Denial of a Legal Education

Because parents have a legal duty to see to their children's schooling within the provisions of these laws, parents who fail to do so may be subject to a criminal complaint against them, found guilty of an infraction, and subject to imposition of fines or an order to complete a parent education and counseling program. (§§ 48291 & 48293.) Additionally, the parents are subject to being ordered to enroll their children in an appropriate school or education program and provide proof of enrollment to the court, and willful failure to comply with such an order may be punished by a fine for civil contempt. (§ 48293.)
Jurisdiction over such parental infractions may be assigned to juvenile court judges. (§ 48295; Welf. & Inst.Code, § 601.4.) Further, under section 361, subdivision (a) of the Welfare and Institutions Code, the juvenile court has authority to *84 limit a parent's control over a dependent child, including a parent's right to make educational decisions for a child, so long as the limitations do not exceed what is necessary to protect the child; and under section 362, subdivision (d) of that code, the juvenile court may make reasonable orders directed at the parents to ensure that the child regularly attends school. An order directing a child's regular attendance at school in compliance with the Education Code's provisions for compulsory education is a protection against the child being adjudged a habitual truant, while it also recognizes the child's rights under California's compulsory public education law.

3. Analysis of the Education Issues in the Instant Case

The parents in this case assert that when the mother gives the children educational instruction at home, the parents are acting within the law because mother operates through Sunland Christian School where the children are "enrolled."[4] However, the parents have not demonstrated that mother has a teaching credential such that the children can be said to be receiving an education from a credentialed tutor. It is clear that the education of the children at their home, whatever the quality of that education, does not qualify for the private full-time day school or credentialed tutor exemptions from compulsory education in a public full-time day school.
The parents are not aided by a letter from the Lynwood Unified School District stating that Sunland Christian School "appeared to be a valid charter school." Aside from the fact that Sunland Christian School cannot be a charter school unless it is, among other things, part of California's public school system and nonsectarian,[5] the parents present no authority to the effect that a charter school can excuse the statutory requirement that tutors be credentialed if their students are to come within the tutor exemption to compulsory public school education.
Likewise, an affidavit of Sunland Christian School administrator Terry Neven provides no authority for the parents' home schooling. In the affidavit, Neven talks at length about "independent study" programs, including his school's independent study program. He does not mention any Education Code section that provides for parents teaching their children by "independent study" through private schools. Section 51745 et seq. provides for independent study for students, through a school district or a county office of education; however, its purpose is to provide students with certain educational opportunities, such as education during travel, or individualized study in an area of interest or subject not currently available in the regular school curriculum. Clearly, section *85 51745 does not apply to mother's home schooling of the children.
Nor is there importance to Mr. Neven's statement, in a letter to the Lynwood Unified School District, that Sunland Christian School "has been evaluated by both Los Angeles Unified School District and the Los Angeles County Office of Education to be in compliance with state laws."[6] Such representation does not constitute a statement that the Los Angeles Unified School District and the Los Angeles County Office of Education knowingly gave their stamp of approval to children being deprived of an education in a public or private full-time day school setting, or by a credentialed tutor, through the ruse of enrolling them in a private school and then letting them stay home and be taught by a non-credentialed parent.
Although Mr. Neven reported to the Lynwood Unified School District that he makes visits to the parents' home about four times a year, and although some of the children in the family reported to the Department of Children and Family Services social worker that they were given tests at the end of some school years and they took-the tests at the Sunland Christian School, the fact remains that the children are taught at home by a noncredentialed person. Moreover, the very language of section 48222 is an implicit rejection of the parents' position that having someone from Sunland Christian School monitor mother's instruction of the children is sufficient. Section 48222 provides an exemption from compulsory public school education for "[c]hildren who are being instructed in a private full-time day school." (Italics added.) It is the language of the statutes that constitutes California's plan for education of its children. Thus, under California's compulsory public school education law, Mr. Neven's occasional observation of mother's instruction of the children and their occasional taking of tests at the private school is without legal significance.
Lastly, we address the parents' claim that they home school their children because of religious beliefs. We recognize that "a State's interest in universal education ... is not totally free from a balancing process when it impinges on fundamental rights and interests, such as those specifically protected by the Free Exercise Clause of the First Amendment, and the traditional interest of parents with respect to the religious upbringing of their children so long as they ... `prepare [them] for additional obligations.'" (Wisconsin v. Yoder (1972) 406 U.S. 205, 214, 92 S.Ct. 1526, 32 L.Ed.2d 15 (Yoder).) The parents cite Yoder as a basis for their contention that their religious beliefs entitle them to refuse to send their children to school.
Yoder involved children whose parents' religion (Amish) accepted education given outside of the home for grades one through eight but mandated that children not continue their education in a public or private school past the eighth grade. The Yoder court rejected the notion that parents have a universal right to refuse to obey a state's compulsory education law. The court recognized that "allowing every person to make his own standards on matters of conduct in which society as a whole has important interests" is precluded by "the very concept of ordered liberty," and thus, "if the Amish asserted their claims because of their subjective evaluation and rejection of the contemporary secular values accepted by the majority, ... their *86 claims would not rest on a religious basis" but rather would be philosophical and personal. (Yoder, supra, 406 U.S. at pp. 215-216, 92 S.Ct. 1526.) However, from the testimonial evidence of scholars on the subjects of religion and education, the court found that the Amish traditional way of life does not rest on personal preferences but rather on "deep religious conviction, shared by an organized group, and intimately related to daily living" (id. at p. 216, 92 S.Ct. 1526), and the Amish religious beliefs and style of living are centuries old (id. at p. 217, 92 S.Ct. 1526). "Old Order Amish communities today are characterized by a fundamental belief that salvation requires life in a church community separate and apart from the world and worldly influence. This concept of life aloof from the world and its values is central to their faith." (Id. at p. 210, 92 S.Ct. 1526.) Testimony showed that not only were the values taught in high schools contrary to those of the Amish religion, but attendance at high school takes Amish children away from their community during the period of their lives when they are to acquire Amish attitudes and integrate into the Amish religious community. The Yoder court observed that Amish children receive an informal vocational education in their own communities after graduation from eighth grade that prepares them to be productive members of the Amish community. (Id. at pp. 211-212, 222, 92 S.Ct. 1526.) Moreover, one of the witnesses testified that compulsory high school education for Amish children would "ultimately result in the destruction of the Old Order Amish church community as it exists in the United States today." (Id. at p. 212, 92 S.Ct. 1526.)
The parents in the instant case have asserted in a declaration that it is because of their "sincerely held religious beliefs" that they home school their children and those religious beliefs "are based on Biblical teachings and principles." Even if the parents' declaration had been signed under penalty of perjury, which it was not, those assertions are not the quality of evidence that permits us to say that application of California's compulsory public school education law to them violates their First Amendment rights. Their statements are conclusional, not factually specific. Moreover, such sparse representations are too easily asserted by any parent who wishes to home school his or her child.

4. Remand for Further Proceedings

Because the trial court in this case simply ruled that the parents have a constitutional right to home school their children, the court made no explicit factual findings concerning the parents' compliance with California's compulsory public education law. So that findings and legal conclusions can be made on the record by the trial court, we will remand the case for a hearing on the issue whether the parents have been in compliance with that law."
The dependency court should exercise the authority, granted to it by Welfare and Institutions Code sections 361, subdivision (a), and 362, subdivision (d), to order the parents to comply with the Education Code. Upon remand, absent any legal ground for not doing so, the court must order the parents to (1) enroll their children in a public full-time day school, or a legally qualified private full-time day school and (2) see to it that the children receive their education in such school. Given the history of this family, which we need not discuss here,[7] permitting the parents *87 to educate the children at home by means of a credentialed tutor would likely pose too many difficulties for the tutor. Further, the court should not permit the children to be enrolled in the Sunland Christian School because that school was willing to participate in the deprivation of the children's right to a legal education.

DISPOSITION
The petition for extraordinary writ is granted. Let a writ of mandate issue directing the respondent juvenile court to comply with the views expressed herein.
WE CONCUR: KLEIN, P.J., and KITCHING, J.
NOTES
[1] Over the years, the parents of the children have given various reasons for not sending the children to school. Although previously they stated they do not believe in the policies of the public school system, more recently they have asserted that they home school because of their religious beliefs. The father also recently opined that educating children outside the home exposes them to "snitches."
[2] Unless otherwise indicated, all references herein to statutes are to the Education Code.
[3] In the instant case, the parents' citation to Cassady v. Signorelli (1996) 49 Cal.App.4th 55, 56 Cal.Rptr.2d 545 provides them with no support for their assertion of a right to home school their children with the mother providing the educational instruction. Cassady is a family law case involving the question whether the trial court abused its discretion when it ordered that a minor child must attend a public or private school rather than be home schooled. Although the reviewing court stated that "a parent might normally have the right to provide home schooling, private schooling, or government schooling to a child," the court did not address the requirements of the Education Code, nor the excellent treatment of California's public compulsory education law found in Shinn and Turner. The court simply ruled that based on the tacts of the case, it was not an abuse its discretion to order that the child not be home schooled.
[4] In support of the parents' home schooling, Terry Neven, Sunland Christian School's administrator, submitted a letter in which he stated the school is a private school and the two younger children are enrolled there. The letter fails to mention that the children do not actually receive education instruction at the school.
[5] Charter schools are part of, and are under the jurisdiction of, California's public school system. (§ 47615; Wilson v. State Bd. of Education (1999) 75 Cal.App.4th 1125, 1137, 89 Cal.Rptr.2d 745 et seq.) They must be nonsectarian in their programs and all other operations, they cannot charge tuition, and they cannot be conversions from private schools. (§§ 47605, subd. (d)(1) & 47602, subd. (b); Wilson, at p. 1131, 89 Cal.Rptr.2d 745.) Their teachers must be credentialed as teachers in other public schools would be required to be credentialed. (§ 47605, subd. (l); Wilson, at p. 1137, 89 Cal.Rptr.2d 745.)
[6] Both the Lynwood and the Los Angeles school districts are mentioned in Mr. Neven's letter because the children live in one school district, and the Sunland Christian School is in the other school district.
[7] On November 20, 2007, we filed a separate, unpublished opinion for this case that decides consolidated appeals (Nos. B192601 and B195484) filed by the parents and two of the minor children. Those appeals address matters other than the home schooling issue and our opinion sets out a history of the family vis-à-vis the dependency court.